IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**ATTALA STEEL INDUSTRIES, LLC**                                                                **PLAINTIFF**

v.                                                                                       CAUSE NO.: 4:24-cv-53-SA-JMV

**THE TRAVELERS INDEMNITY
COMPANY OF AMERICA**                                                                         **DEFENDANT**

## ORDER DENYING MOTION TO STRIKE

This matter is before the court on Defendant Travelers Indemnity Company of America's Motion to Strike Plaintiff Attala Steel Industries, LLC's Expert Disclosure of Jared Kaufman, P.E. and to Preclude his Expert Testimony. [Doc. 158]. A response in opposition to the motion [Doc. 167] and a reply in support thereof [Doc. 173] have been filed, making the matter ripe for decision. For the reasons explained below, the motion is denied.

**Background**

This action, filed on June 12, 2024, concerns whether a policy of commercial property insurance that Travelers issued to Plaintiff (the "Policy") affords coverage for certain losses Plaintiff allegedly sustained when, on or about April 28, 2023, a hole formed in the wall of a large tank, known as a "galvanizing kettle," (the "Kettle") that was used in Plaintiff's manufacturing operation allowing molten zinc to escape. After notice of the claim, Travelers engaged a mechanical engineer and undertook an investigation to determine, for purposes of a coverage decision, the cause of the hole. Based on its investigation of the claim, including the report prepared by its mechanical engineer, Travelers denied coverage based on exclusions for loss or damage resulting from wear and tear; deterioration; corrosion; faulty, inadequate or defective workmanship or materials, among others. [Doc. 132] - Exh. 17.

1

Attala, on the other hand, insisted the hole was caused when, during the dross removal process, the dross removal bucket accidentally contacted and punctured the kettle wall, creating a hole that allowed molten zinc to flow out—a circumstance they alleged was not subject to exclusion from coverage under the policy.

On August 22, 2024, a Case Management Order was entered setting, in relevant part, the following deadlines: Plaintiff's Designation of Experts due by March 4, 2025; Defendant's Designation of Experts due by April 4, 2025; Discovery due by June 4, 2025; Daubert Motions due by July 11, 2025; and Dispositive Motions due by August 7, 2025. [Doc. 38]. Trial was set for January 12, 2026. [Doc. 39].

On March 4, 2025, by joint oral motion of the parties, the CMO deadlines were extended as follows: Plaintiff's Designation of Experts due by March 14, 2025; Defendant's Designation of Experts due by May 15, 2025; Expert-related Discovery due by June 16, 2025; Fact-related Discovery due by July 11, 2025. [Doc. 76].

On March 14, 2025, Plaintiff filed its Notice of Service of Expert Disclosures of Shane Kennett and Jared Kaufman. [Doc. 87]. The notice did not recite in what capacity—specially-retained or not—the experts were being designated.[1] The Rule 26(a)(2) disclosure of Kaufman, in particular, served on Defendant the same day read, in relevant part:

> Pursuant to FED. R. CIV. P. 26(a)(2) and L.U. CIV. R. 26(a)(2), Plaintiff, Attala Steel Industries, LLC ("Attala Steel") hereby gives notice that it is disclosing Jared Kaufman, P.E. as an expert witness who may provide testimony at the trial of this matter…. A copy of Mr. Kaufman's Report is attached to the March 14, 2025, joint Report incorporated herein as **Exhibit A**.

---

[1] As discussed *infra* p. 10, the defendant similarly designated its experts without qualification as to whether they were "specially retained" or not. However, it appears the parties offer the same as specially-retained experts given the circumstances and reference to their compensation and the production of the Kettle Leak Report discussed herein.

2

…

## II. FIELD OF EXPERTISE

Jared Kaufman is a licensed Professional Engineer with Bachelor's and Master's Degree in Mechanical Engineering. He is the President of CIC Pittsburgh LLC, which specializes in the supply and service of industrial furnaces and hot dip galvanizing equipment Mr. Kaufman has direct knowledge and experience designing, manufacturing, inspecting, troubleshooting, and servicing the type of steel galvanizing kettle and furnace at issue in this matter….

## III. SUBJECT MATTER OF EXPERT TESTIMONY

Mr. Kaufman is expected to testify in conformity with the written Report attached hereto, which he has reviewed, contributed towards, and will attest to in his capacity as a technical consultant. Specifically, Mr. Kaufman will testify as to the standard installation, operation, maintenance, and lifespan of the galvanizing kettle and furnace, the dross removal process, and the root cause of the failure and hole that developed in the Plaintiff's steel galvanizing kettle, located at 2200 Attala Road 2202, Kosciusko, Mississippi, on April 29, 2023. Mr. Kaufman is further expected to testify as to the inaccurate causation findings asserted by the Defendant's engineering expert(s) and erroneously relied upon by the Defendant. Mr. Kaufman's opinions and testimony are made within a reasonable degree of engineering and scientific certainty based on his education, experience, review of relevant documents, industry standards, and analyses of relevant technical issues.

## IV. SUMMARY OF FACTS AND OPINIONS

Mr. Kaufman is expected to testify in conformity with the written Report and within a reasonable degree of engineering and scientific certainty, that:

1. Certain findings and conclusions asserted by the Defendant's expert, Engineering Design & Testing Corp. ("ED&T"), are inaccurate, unfounded, and/or not relevant.
2. ED&T does not fully understand the Plaintiff's dross removal procedures, resulting in incorrect assumptions/assertions as to the impact.
3. The kettle failed due to advanced wall thinning near the lowest burner on the southeast corner of the furnace, which could not have been known nor detectable by the Plaintiff prior to the incident following normal practices.
4. The southeast corner of the kettle experienced advanced thinning compared to the other corners, which was caused by localized elevated temperatures of the kettle wall itself. Specifically, the heat from the lowest burner of the furnace was impacting only the southeast corner of the kettle wall due to one or more of the

3

> following factors: (i) natural gaps in the heat shield above the dross protection insulating boards, (ii) issues with the insulation boards themselves (broken, dislodged, mis-/displaced), (iii) deflection of the lowest southeast corner burner's flame, and/or (iv) deterioration of the lowest southeast corner burner.

[Doc. 167] - Exh. 1.

Regarding Kennett, the disclosure read in relevant part:

> Pursuant to FED. R. CIV. P. 26(a)(2) and L.U. CIV. R. 26(a)(2), Plaintiff, Attala Steel Industries, LLC ("Attala Steel") hereby gives notice that it is disclosing Shane Kennett, PhD, PE….
> …
> **II. FIELD OF EXPERTISE**
> Shane Kennett is the Managing Director of Engineering Sciences at the engineering and consulting firm, Secretariat Advisors LLC. He is a Professional Engineer, Mechanical Engineer, Metallurgical Engineer, and Certified Welding Inspector. He has a Bachelor's Degree in Mechanical Engineering and a PhD in Metallurgical and Materials Engineering. His work includes the investigation of metallic component failures in mechanical systems and equipment at industrial facilities. He provides root-cause analyses of metal component failures based on his expertise, applicable codes, and industry standards. A copy of Mr. Kennett's Report dated March 14, 2025 is attached to this disclosure and incorporated herein as **Exhibit A**.
>
> **III. SUBJECT MATTER OF EXPERT TESTIMONY**
> Mr. Kennett is expected to testify, in conformity with his written Report, as to the cause of the failure and hole that developed in the Plaintiff's steel galvanizing kettle, located at 2200 Attala Road 2202, Kosciusko, Mississippi, on April 29, 2023. Mr. Kennett is further expected to testify as to the standard operation and functions of the galvanizing kettle and furnace, the dross removal process, and the physical loss and/or damage sustained as a result of the kettle failure. Mr. Kennett is also expected to testify as to the inaccurate causation findings asserted by the Defendant's engineering expert(s) and erroneously relied upon by the Defendant. Mr. Kennett's opinions and testimony are made within a reasonable degree of engineering and scientific certainty based on his education, experience, review of relevant documents, field inspection(s), industry standards, and analyses of relevant technical issues.

4

> IV.     SUMMARY OF FACTS AND OPINIONS
>
> Mr. Kennett is expected to testify in conformity with his written Report, and within a reasonable degree of engineering and scientific certainty, that:
> 1. The findings and conclusions asserted by the Defendant's expert, Engineering Design & Testing Corp. ("EDT"), are inaccurate and unfounded.
> 2. EDT does not fully understand the Plaintiff's dross removal procedures, resulting in incorrect assumptions.
> 3. The kettle failed due to advanced wall thinning in one location near the lowest burner on the southeast corner of the furnace, which was neither known to nor detectable by the Plaintiff prior to the incident.
> 4. The southeast corner of the kettle experienced advanced thinning compared to the other corners, which was caused by localized elevated temperatures. Specifically, flames from the lowest burner of the furnace were concentrated in the southeast corner of the kettle wall due to one or more of the following factors: (i) natural gaps in the heat shield above the dross protection insulating boards, (ii) issues with the insulation boards themselves (broken, dislodged, mis-/displaced), (iii) deflection of the lowest southeast corner burner's flame, and/or (iv) deterioration of the lowest southeast corner burner.

[Doc. 167] - Exh. 2.

The Report (Exhibit A to the foregoing disclosures, as referenced therein) bears a cover page that reads: "Attala Steel Industries v The Travelers Indemnity Company of America Prepared for: Saxe Doernberger & Vita, P.C. on behalf of Attala Steel Industries Kosciusko, Mississippi Summary Expert Report on Kettle Leak." At the bottom of the page it states: "*Prepared by: Shane Kennett, PhD, PE, CWI Managing Director Engineering Sciences*" and "*Reviewed by: Jared S. Kaufman, PE President CIC Pittsburgh LLC*" with both signing next to their respective name.

The 29-page narrative report thereafter makes only a single reference to Kaufman by name. On page 25 at footnote 43 it states: "CIC Pittsburgh LLC made the recommendation during

5

remedial work post-incident with ASI to retrofit the replacement Westech furnace with the larger additional view ports. Discussions with Mr. Jared Kaufman, PE."

Further, the narrative report makes only the two additional references to CIC Pittsburg LLC, of which Mr. Kaufman serves as president. On pages 4 and 5 it states:

> Compensation
> Secretariat [Mr Kennett's employer] is compensated $545 per hour for my time and testimony in 2025. CIC Pittsburgh is compensated between $150 and $195 per hour for their time and the curriculum vitae of the technical advisor/reviewer is attached as Appendix C. Secretariat's and CIC Pittsburgh's fees are not in any way contingent or tied to the outcome of this matter.
> Limitations
> Secretariat and CIC Pittsburgh are investigating specific aspects related to the 2023 leak that occurred at ASI's Kosciusko, Mississippi facility. The opinions offered in this document are limited to the documents and information available to Secretariat and CIC Pittsburgh at the time of writing. Secretariat and CIC Pittsburgh reserve the right to supplement this document… Secretariat and CIC Pittsburgh have endeavored to be accurate and complete in the assignment….

[Doc. 167] - Exh. 5.

On March 25, 2025, a second joint motion to extend the CMO deadlines was filed, and the unexpired deadlines were extended as follows: Defendant's Designation of Experts due by August 15, 2025; Expert-Related Discovery due by September 15, 2025; Fact Discovery and Daubert Motions due by October 10, 2025; Dispositive Motions due by November 7, 2025. [Doc. 95]. Trial was reset for April 13, 2026. [Doc. 96].

On July 15, 2025, Defendant filed a notice to take the Deposition of Shane Kennett. [Doc. 124]. Recited below are the portions of Kennett's deposition testimony concerning preparation of Kettle Leak Report that are referenced by the parties in connection with their briefing on the instant motion to strike:

6

Q. Okay, good. So this report is -- you are the author of this report, correct?

A. That is correct.

Q. All right. And -- and it uses a lot of pronouns, I, my, mine, those are referring to you, Shane Kennett, correct?

A. That is correct.

Q. All right. Not to anybody else?

A. Correct.

Q. Thank you. And that report contains all of the findings, all of the observations, and all of the opinions that you have reached in this case, correct?

A. Partially. As the title of the report says, it's a Summary Extra Report. So it's not like I've put in this report a comment about every single photograph I took, and what my findings about that photograph would be. This is a -- I'm here to do the root cause analysis. This is my summary of my opinions, and how I got to my opinions, and the basis.

[Doc. 167] - Exh. 3.

Q. Jared Kaufman is with CIC Pittsburgh, correct?

A. That's correct.

Q. You list him in your report, or at least he signed it as reviewed -- reviewed by on the cover page. You see that?

A. That's correct.

Q. All right. He didn't author this report?

A. Not -- not directly. It was -- he was like a Technical Advisor, Reviewer of it, who had specific industry experience in the galvanizing -- in the furnace facility, so helped --

Q. Right. So he reviewed it?

A. Reviewed it, commented on it. We had discussions about, sort of, causation theories and said, yeah, this all looks good to me.

Q. Okay. He didn't author the report, you did, correct? A. He did not write it. I wrote it, correct.

Q. Okay. So Shane Kennett is the sole author of the report?

A. I am the author, yes.

Q. All right. And that's why it says, "Prepared by Shane Kennett," and you signed it on the cover page, correct?

A. That is correct.

Q. And it doesn't say, prepared by Jared Kaufman, correct?

A. That's correct.

Q. Are you aware of any report that Jared Kaufman prepared as an expert in this case?

A. I am not.

Q. I'm not either. That's why I asked the question. Okay.

A. He was Technical Advisor, Reviewer to me.

Q. Sure. So and -- and you had him as a technical advisor because he has far more experience in the galvanizing industry than you do, correct?

MR. PEPE: Objection. Form.

THE WITNESS: Sort of. So he -- his company manufactures the furnaces and his company was involved with the replacement furnace. So when it …

[Doc. 158] - Exh. 3 at 8-9.

A. And there's insulation boards there. Like, it's going to help protect it.

Q. Right. So the -- but the best you can do in terms of giving me an opinion with some degree of – a reasonable degree of engineering certainty is to say, I think it was one of these things or more than one of these things, but I can't say which ones or which one, right?

MR. PEPE: Objection. Form.

THE WITNESS: It -- that is my opinion. And that's why the last sentence is, it's not possible for myself, and I hold the view that other parties can't go any further either. I think my opinion --

BY MR. VARGA:

Q. Well, I appreciate what you think other people can do, but I'm asking for your opinion. And your opinion is you can't go any further than saying, I think it's one or possibly more than one of these four things, but I can't say which, right?

MR. PEPE: Objection. Form.

THE WITNESS: That's what I put in my report.

8

BY MR. VARGA:

Q. Okay.

A. If I could go further, I would have.

Q. All right. Okay. Now, in the executive

[Doc. 158] - Exh. 3 at 10.

A. It's the summary report, and I've summarized my opinions, and that's what's there.

Q. Okay. You -- you -- you understand that you were required in this report to state the bases and the reasons for the conclusions that you offer and -- excuse me -- the opinions that you offer, right? You understood that when you wrote it?

A. I was asked to write --

MR. PEPE: Objection. Form.

THE WITNESS: I was asked to write a summary exit report, which I did. I did not write a 200-page treaties on every possible little thing that I thought was common sense in my investigation.

[Doc. 158] - Exh. 3 at 11.

…cause of the kettle failure?

MR. PEPE: Objection.

THE WITNESS: I don't know what he's been asked to do. I just know in the context of, he was aresource available to me, and wanted to be able to chat with him, and bounce ideas off of him, and --

BY MR. VARGA:

Q. Okay. And -- and to be fair, to be clear, Ishould say, none of the opinions that are set forth in Exhibit 2 are opinions that were authored by Jared Kaufman, correct?

A. He --

Q. Those -- those are your opinions?

A. They are my opinions, and I had discussions with him in the process, and he read it, and said, yeah, I -- I don't see any technical issues from the perspective of the industry, kind of, furnace guy.

Q. Okay. So he -- I guess, fair to say, he validated the opinions that you articulated; is that fair?

9

>MR. PEPE: Objection.
>
>THE WITNESS: He reviewed and proved the content and, sort of, the -- the more industry side of it, yeah. Validated, I guess, you could use that word, but there's nothing in there that he disagreed

[Doc. 158] - Exh. 3 at 12.

>with that I said, no, this has to stay in. It was a collaborative. Like, let's work through it, and yeah, yeah. But -- like -- like, that's what it is.
>
>BY MR. VARGA:
>
>Q. Were you ever asked to review a report that Mr. Kaufman prepared in relation to the failure of this kettle?
>
>MR. PEPE: Objection to the extended calls for anything privileged.
>
>MR. VARGA: I'm not asking for anything privileged.
>
>MR. PEPE: Objection.
>
>BY MR. VARGA:
>
>Q. I'm asking if you've ever asked to review areport that he prepared?
>
>A. Not that I -- no, not that I recall.
>
>Q. Or you've never seen a report prepared by Jared Kaufman; is that correct?
>
>A. I have not.
>
>Q. You've never seen a report prepared by anybody at CIC Pittsburgh in relation to this kettle failure, correct?
>
>A. Not that I recall.
>
>Q. All right. You're not aware of anybody at CIC Pittsburgh, Jared Kaufman or otherwise, preparing a report in relation to this failure of the kettle, correct?
>
>A. I'm not aware of that.

[Doc. 158] - Exh. 3 at 12-13.

On August 15, 2025, Defendant timely filed a notice of designation of its expert witnesses, but without, as noted above, indicating whether specially retained or not. [Doc. 131]. The notice recited that the disclosures required pursuant to Fed. R. Civ. P. 26(a)(2) were timely served. *Id*.

10

On September 10, 2025, Defendant filed the instant motion to strike. On September 15, 2025, the deadline for discovery of experts expired. On October 10, 2025, the deadline for filing *Daubert* motions and concluding fact witness discovery will run.

The Motion to Strike

In support of this Motion, Travelers submits that "the Kaufman Disclosure was not accompanied by a report authored and signed by Mr. Kaufman setting forth the opinions to which he intends to testify, the basis and reasons for those opinions, or any of the other content mandated by Fed. R. Civ. P. 26(a)(2)(B) and L.U. Civ. R. 26(a)(2)." [Doc. 164]. Instead, Travelers argues that while the Kaufman Disclosure represents that "[a] copy of Mr. Kaufman's Report is attached to the March 14, 2025 joint Report incorporated herein as Exhibit A," the report attached as "Exhibit A" to the Kaufman Disclosure was actually authored by Shane Kennett, Ph.D., a different expert designated by Plaintiff on March 14, 2025." *Id*.

In support, it argues that the Report appears on the letterhead of Secretariat, the professional services firm that employs Dr. Kennett, and that the cover page of the Report states that it was "Prepared By" Shane Kennett while as to Mr. Kaufman, it states simply it was "Reviewed By" Jared Kaufman. Further, citing Dr. Kennett's deposition testimony above, Travelers argues that Kennett himself disclaimed any contribution by Kaufman to the report, itself prepared, he testified, entirely by him, except for technical advice and review on/of some unspecified aspect(s) of the 29-page narrative report. As a result, Travelers argues it "is left to speculate as to the opinions [Kaufman] might seek to offer at trial (if allowed to testify); the basis and reasons for those opinions; and the facts, data, evidence or assumptions that Mr. Kaufman considered in forming the opinions. Thus, if Mr. Kaufman were allowed to offer any expert opinion at trial, Travelers would be blindsided by his testimony." [Doc. 159] at 8.

11

Travelers cites Federal Rule of Civil Procedure 26(a) to support its motion, which requires a party to serve with its disclosure of a specially retained expert a written report, prepared and signed by the expert, that contains the following information:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
> (ii) the data or other information considered by the witness in forming them;
> (iii) any exhibits that will be used to summarize or support them;
> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
> (v) a list of all other cases in which, during the previous four years, the witness testified as an expert witness at trial or by deposition; and
> (vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B).

Travelers also relies on Local Uniform Civil Rule 26(a)(2), which requires a party to make "a full and complete [expert] disclosure as required by Fed. R. Civ. P. 26(a)(2) ... no later than the time specified in the case management order," as well as Local Rule 37(c)(1) that provides "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) ..., the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Similarly, Travelers notes Local Uniform Civil Rule 26(a)(2), states: "Absent a finding of just cause, failure to make full expert disclosures by the expert designation deadline is grounds for prohibiting the introduction of that evidence at trial… An attempt to designate an expert without providing full disclosure information . . . will not be considered a timely expert designation and may be stricken upon proper motion or *sua sponte* by the court." L.U. Civ. R. 26(a)(2).

Finally, Travelers argues Attala cannot prove that its discovery violation was either substantially justified or harmless. *See, United States upon Rel. of Tennessee Valley Auth. v.*

*Easements & Rts.-of-Way Over 3.94 Acres of Land, More or Less, in DeSoto Cnty., Mississippi*, 701 F. Supp. 3d 494, 497 (N.D. Miss. 2023). To do so requires a weighing of four factors: (1) the explanation, if any, for the party's failure to comply with the . . . order; (2) the prejudice to the opposing party of allowing the witnesses to testify; (3) the possibility of curing such prejudice by granting a continuance; and (4) the importance of the witnesses' testimony." *Jones v. Lanter Delivery Sys. Inc.*, No. 3:15CV135, 2016 WL 3265293, at *1 (N.D. Miss. June 14, 2016) (quoting *Barrett v. Atlantic Richfield Co.*, 95 F.3d 375, 380 (5th Cir. 1996)).

According to Travelers, the first factor weighs in favor of striking the expert as no explanation has been offered by Attala for the insufficiency of the disclosure, given its position that it has sufficiently and timely complied with its obligation under Fed. R. Civ. P. 26 with respect to Mr. Kaufman. As for prejudice created by allowing the testimony of Kaufman, Travelers argues it would be extreme, as it has no way of knowing what Kaufman, as distinct from Kennett, is expected to testify to at trial, or the basis thereof. Further citing *Bailey v. Stanley Access Techs., Inc.*, No. 3:14-CV-72-SA-JMV, 2015 WL 6828921, at *1 (N.D. Miss. Nov. 6, 2015), Travelers argues this prejudice cannot be cured simply by allowing it to depose Kaufman now, or by continuing the trial to permit a late disclosure of his opinions, because this would only serve to unfairly increase the expense of this litigation for Travelers and impede the progress of this case to trial.[2] Lastly, with respect to the importance of the testimony factor, Travelers maintains that any testimony of Kaufman is not important because Attala, as demonstrated by a comparison of

---

[2] The Court held in *Bailey* that while continuances may be possible to allow the other party to address the new testimony, it is within this Court's discretion to exclude such testimony where a continuance could result in additional expense in defending the lawsuit and would not serve to enforce local rules or court-imposed scheduling orders.

13

the representations made in the disclosures of each of Attala's experts, has already designated Kennett to testify on the same subject matter.[3]

Attala's Response in Opposition

Attala makes the following arguments in response to the instant motion:

It asserts that Kaufman's designation and disclosures are proper and timely because the Kettle Leak Report has a signature of Kaufman on it (albeit as "reviewed by") and was disclosed on the Plaintiff's expert designation deadline. Attala asserts the designation and Report contains all of the opinions, facts, and the basis for the same that will be offered by Kaufman, as well as Dr. Kennett, and the fact that the report does not delineate which are the facts opinions and data attributable to Dr. Kennett versus Kaufman, is irrelevant, because each expert is offered on all the opinions, facts, and data contained in the 29-page report. [Doc. 168] at 11. For legal authority, Attalla relies on *Dale K. Barker Co., P.C. v. Valley Plaza*, 541 F. App'x 810, 815–16 (10th Cir. 2013), for the proposition that where two experts reviewed the same materials and, working together, came to the same opinions, and were both prepared to testify to all the opinions in the report, the district court did not abuse its discretion in allowing them both to testify.

Attala also argues that even if the disclosure was not proper, the motion should be denied because Travelers cannot establish that the four factors outlined in *Jones* weigh in favor of striking Kaufman's testimony. In support, Attala argues, seemingly in an entirely contradictory manner from its above referenced position, that the Kaufman testimony is important because Kaufman, unlike Dr. Kennett, can testify about his specific industry experience in the steel galvanizing industry, while Dr. Kennett's expertise is as metallurgist, an expertise that lies instead in the

---

[3] Though Kaufman's CV is attached to the Kettle Leak Report, there is no disclosure of the total compensation he had been paid for work in connection with the Kettle Leak Report and no list of cases that he testified in on other matters.

knowledge of the mechanical and chemical properties of metals, rather than the specifics of the steel galvanizing industry or the installation, operation, and maintenance of steel galvanizing furnaces. Further, Attala asserts, again in apparent contradiction to its earlier stated position in the same opposition brief, "it is clear that there are differences between the two. ….. Travelers plainly ignores the differences within the expert disclosures, which demonstrate that Mr. Kaufman's testimony will not be duplicative of Dr. Kennett's testimony." [Doc. 168] at 10.

On the prejudice factor, Attala asserts Travelers will suffer none because "any prejudice claimed by Travelers is of its own its the making… Travelers waited months to depose Dr. Kennett after receiving the Joint Report and then filed the instant Motion just five days before the close of expert discovery. If Travelers filed the instant Motion prior to this late date, Attala Steel would have had an opportunity to cure the expert disclosure…. If Travelers was concerned regarding which opinions were attributable to each expert, it should have sought clarification. In sum, Travelers cannot claim prejudice at this late stage." *Id.*

As for the reason why Dr. Kennett and Mr. Kaufman were designated in the fashion they were, Attala contends it was "done to allow for a more cohesive opinion that addressed not only the underlying scientific basis for the loss, but also the practical information relative to the industry that is central to determining whether the cause of the loss is excluded under the Policy." *Id*. at 12.

Finally, Atalla argues that to the extent this Court considers the Kaufman Disclosure to be deficient, "such deficiency could easily be cured by a supplemental disclosure identifying with greater particularity the opinions held by Mr. Kaufman, and/or identifying the sections of the Joint Report that he contributed to…. this Court has the power to grant a limited extension of the Case

15

Management Order to allow the deposition of Mr. Kaufman, without affecting the trial date." *Id*. at 11.[4]

Travelers' Reply

In its reply in support of the instant motion, Travelers essentially reiterates its prior arguments, but highlights the fact that at his deposition, Dr. Kennett unequivocally confirmed that Kaufman "did not write [the Kettle Leak Report]. I wrote it." [Doc. No. 158-3 at 80:25-81:2]. Dr. Kennett also clarified the scope of Mr. Kaufman's involvement, explaining that he was a "Technical Adviser" who simply reviewed and commented on the Kettle Leak Report. (*See id.* at 80:16-81:12). And, while acknowledging that joint expert reports are allowed in this Circuit, Travelers notes that case law requires that such reports must contain *clear delineations* of: (i) the division of labor between the experts; (ii) the opinions attributable to each expert; and (iii) the basis and reasons for each expert's opinions and testimony. *See, e.g., Cooper v. Meritor, Inc.,* No. 4:16-CV-52, 2019 WL 545187, at *7 (N.D. Miss. Feb. 11, 2019) (citing cases); *Merrill Lynch, Pierce, Fenner & Smith, P.C. v. Greystone Servicing Corp., Inc.*, No. 3:06-CV-0575, 2010 WL 11530924, at *4 (N.D. Tex. Jan. 5, 2010) Travelers argues that no such delineation is made in the Kettle Leak Report.

Travelers also emphasizes that Plaintiff's suggestion that any prejudice could be "cured" by allowing Travelers to depose Mr. Kaufman at this late stage is meritless, citing *State Auto. Mut. Ins. Co. v. Freehold Mgmt., Inc.*, No. 3:16-CV-2255-L, 2019 WL 1436659, at *25 (N.D. Tex. Mar. 31, 2019) ("To accept Defendants' argument that inadequate, untimely, and last-minute disclosures are harmless whenever the opposing party has the opportunity to later depose the expert defeats the purpose of the rule and turns it on its head by shifting the burden to the opposing party

---

[4] It would appear that implicit in this proposal is a concession that each expert holds differing opinions and made differing contributions to the Report.

16

. . . ."); *Ratliff v. Marquette Transp. Co. Gulf-Inland, LLC*, No. 19-11299, 2021 WL 2911987, at *4 (E.D. La. July 12, 2021) ("A deposition cannot replace what information a disclosure must supply."); and *Shepherd v. GeoVera Specialty Ins. Servs., Inc.*, No. CIV.A. 14-862, 2015 WL 1040452, at *2 (E.D. La. Mar. 10, 2015) ("An expert cannot remedy deficiencies in his report by clearly articulating his opinions in a deposition. Indeed, if the Court were to permit an expert who submits a deficient report to cure the deficiencies in his deposition, the disclosure requirements of Rule 26 would be rendered meaningless.").

**Additional Law and Analysis**

The undersigned incorporates herein by reference the previous recitations of Fed. R. Civ. P. 26 and 37 and Local Uniform Civil Rule 26(a)(2). However, I find of more paramount relevance the provision of Local Civil Rule 26(a)(3), which was not cited by either party. It provides in relevant part:

> Challenges as to inadequate disclosure of expert witness(es) must be made no later than 30 days before the discovery deadline or will be deemed waived.

L.U. Civ. R. 26(a)(3). These rules collectively provide the vehicle for addressing procedural failures to disclose during discovery and the potential consequences of the same. In general, it is the responsibility of the magistrate judge assigned a case to resolve such issues. *See* L.U. Civ. R. 72.

On the other hand, Fed. R. Evid. 702, *et al*. governs the *admissibility* of expert testimony. It provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
> **(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> **(b)** the testimony is based on sufficient facts or data;
> **(c)** the testimony is the product of reliable principles and methods; and

17

  **(d)** the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.

  The District Judge, rather that the magistrate judge, has the exclusive authority[5] to make determinations of admissibility of evidence pursuant to Fed. R. Evid. 702, et al., and the case law, principally *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993), interpreting those evidentiary rules.[6]

  As concerns the instant motion in particular, it is one to strike for failure to sufficiently disclose in compliance with the reporting obligations in Fed. R. Civ. P. 26. It is not challenging admissibility under Fed. R. Evid. 702, *et al*. (in fact, the deadline for what are commonly referred to as *Daubert* motions has not yet run). Consequently, this motion is easily disposed of as it is filed in contravention of L.U. Civ. R. 26(a)(3). That rule commands that, whether otherwise meritorious or not, the right of Travelers' to challenge the designation for failure of the report to contain all of the necessary information required of specially retained experts has been waived as untimely filed. This rule has repeatedly been applied by the magistrate judges in Mississippi. *See Maggette v. BL*

---

[5] Civil consent cases are the exception to this Rule, whereby the parties consent to a trial by magistrate judge pursuant to L.U. Civ. R. 73.

[6] As recounted in *Parker v. State Farm Fire & Cas. Co.,* No. 2:22-CV-45-HSO-BWR, 2023 WL 4169952, at *5–6 (S.D. Miss. May 22, 2023):

> The Court's gatekeeping duty under F.R.E. 702 requires that it ensure that expert opinions are reliable by determining whether they are based on sufficient fact and are products of reliable methods. The Court cannot perform that duty when an expert relies on information not specified in his written report and never states how that relied-upon information affected his methodology and, ultimately, his opinions. . . . to the extent that Plaintiff takes issue with any failure of State Farm to ask Berberich in detail about his methodology or bases for certain conclusions during depositions, the Court agrees that "[i]t is not State Farm's obligation to fish through and attempt to chisel out all of Berberich's opinions during his deposition on topics not disclosed in the expert report." Reply [56] at 5-6. The law is clear that "[w]hen expert testimony is challenged under *Daubert*, the burden of proof rests with the party seeking to present the testimony."

*Id.*, citing *Corinthian Court Holdings, LLC v. State Farm Fire & Cas. Co.*, No. 2:15-CV-111-KS-MTP, 2017 WL 1324135, 2017 U.S. Dist. LEXIS 53100 at *8 (S.D. Miss. Apr. 6, 2017); *see also*, *Johnson v. Samsung Elecs. Am., Inc.*, 277 F.R.D. 161, 164 (E.D. La. 2011) (citing *Moore v. Ashland Chem., Inc.*, 151 F.3d 269 (5th Cir. 1998)).

*Dev. Corp.*, No. 2:07CV181-M-A, 2011 WL 13157188, at *1 (N.D. Miss. May 9, 2011); *S. Mississippi Elec. Power Ass'n v. M & D Coatings, Inc.*, No. 3:14-CV-278-DMB-SAA, 2016 WL 3212247, at *3 (N.D. Miss. June 7, 2016); *Keyes v. Techtronic Indus. Factory Outlets, Inc.*, No. 3:18-CV-671-DPJ-FKB, 2020 WL 5592694, at *4 (S.D. Miss. Aug. 4, 2020); *Caldwell v. Wal-Mart Stores E., LP*, No. 3:10-CV-651-DPJ-FKB, 2012 WL 1712377, at *1 (S.D. Miss. May 14, 2012). This, however, would not appear to foreclose a Federal Rule of Evidence 702/*Daubert* challenge being made.[7]

**Conclusion**

For the reasons detailed herein, the undersigned finds that Defendant Travelers Indemnity Company of America's Motion to Strike Plaintiff Attala Steel Industries, LLC's Expert Disclosure of Jared Kaufman, P.E. and to Preclude his Expert Testimony [Doc. 158] shall be and is hereby DENIED.

**SO ORDERED** this the 6th day of October, 2025.

/s/ Jane M. Virden
**UNITED STATES MAGISTRATE JUDGE**

---

[7] *See, e.g.*, *Prest v. BP Expl. & Prod. Inc.*, 640 F. Supp. 3d 542, 551 (E.D. La. 2022), *aff'd*, No. 22-30779, 2023 WL 6518116 (5th Cir. Oct. 5, 2023), explaining that compliance with *both* Rule 26 and Rule 702 is required of experts (Even if Prest had complied with the disclosure requirements, however, Ross's general causation opinions for his exposure claims would be excluded because they do not comply with Rule 702 and *Daubert*); *Lighthouse Ranch for Boys, Inc. v. SafePoint Ins. Co.*, No. CV 22-1988, 2023 WL 2613928, at *5 (E.D. La. Mar. 23, 2023) (Moreover, even assuming that Lewis is appropriately disclosed as a non-retained expert pursuant to Rule 26(a)(2)(C), her opinions are still subject to the requirements of Rule 702 and the standards of *Daubert*.); *Tajonera v. Black Elk Energy Offshore Ops.*, No. 13-0366, 2016 WL 3180776, at *7 (E.D. La. June 7, 2016).