# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF MISSISSIPPI
# OXFORD DIVISION

**ATTALA STEEL INDUSTRIES, LLC**                                              **PLAINTIFF**

**v.**                                              **CAUSE NO.: 4:24-cv-53-SA-JMV**

**THE TRAVELERS INDEMNITY**
**COMPANY OF AMERICA**                                                  **DEFENDANT**

## ORDER DENYING MOTION TO COMPEL

This matter is before the court on Plaintiff Attala Steel Industries, LLC's ("Attala Steel's") Motion to Compel [Doc. 163] filed against Defendant, The Travelers Indemnity Company of America ("Travelers"), on September 18, 2025. Travelers filed a response in opposition, but Attala filed no reply, and the time for doing so has long since passed. For the reasons detailed below, the Court finds that the motion to compel is not well-taken and shall be denied.

Presently, the instant motion[1] seeks to compel Travelers to produce "[a]pproximately twenty communications made by or directed to Travelers' staff counsel, Ginta Grenier," which Attala contends have been "unjustifiably redacted or withheld by Travelers based on 'attorney-client privilege' and/or 'work product.'"[2] [Doc. 163] at 1.

The disputed documents have not been submitted to the undersigned for in camera review and are described only cursorily as appears randomly on the document marked Exhibit A to [Doc. 163], entitled "Travelers Revised Privilege Log July 22, 2025." Hereinafter, these documents, are sometimes referenced as the Grenier documents. According to Attala's motion to compel, these

---

[1] The motion initially also sought production of two additional categories of documents. However, the Court was subsequently advised by counsel for the parties that those matters are no longer in dispute, and the only remaining dispute ripe for consideration by the undersigned involves Ms. Grenier's communications.

[2] Though described in the motion as aforesaid, the subject privilege log identifies the documents as being sent from/authored by/addressed to or copied to Ginta Grenier and describes them as having been WITHHELD FROM PRODUCTION (not as redacted), and only on the basis of "attorney-client privilege," not "work product."

1

documents are, but for privilege claimed, responsive to its Request for Production Nos. 3 and 6, which read:

> **Request for Production No. 3:** Produce any and all Communications and Documents between You and any other person(s) concerning the Claim, including but not limited to the notice of, adjustment of, expert opinion, and denial of the Claim; and
>
> **Request for Production No. 6:** Produce all Documents and Communications You relied on or currently rely on with respect to Your denial of coverage for the Claim.

By way of background, this is an insurance coverage dispute that arises from Travelers' alleged wrongful denial of Attala Steel's insurance claim (the "Claim"). The details giving rise to this claim have been repeatedly described in prior opinions of this Court, and in the interest of efficiency, will not be reiterated herein except by the following docket reference: *see* [171], [178].

Of relevance to the instant motion, Attala contends:

> On June 18, 2025, Attala Steel took the deposition of former Travelers' employee, and the original Claims Adjuster for this loss, Gregory Bynum. Mr. Bynum testified, on numerous occasions, that Travelers' staff counsel, Ginta Grenier participated in Travelers' investigation of the loss, including the review of its expert reports ***and the preparation of its coverage denial letters.*** [3] Specifically, upon being asked whether "legal draft[ed] any portion of" its July 11, 2023 coverage denial letter, Mr. Bynum testified "yes."[4]

[Doc. 164] at 4-5.

According to Attala, the forgoing deposition testimony establishes that Ms. Grenier has "personal knowledge regarding Travelers' interpretation of the policy provisions at issue—akin to a claims adjuster— and her communications cannot therefore be shielded on the basis of privilege or work product." *Id.* at 10. In support, it asserts a claims adjuster's reliance on in-house counsel's legal opinion to deny the claim impliedly waives the attorney-client privilege, citing *Travelers Property Casualty Co. of Am. v. 100 Renaissance, LLC*, 308 So. 3d 847 (Miss. 2020). *See id.* Attala

---

[3] *See* Bynum Dep. 150:13-17; 151:16-21; 157:21-158:4; 159:10-160:9; 253:6-10 (June 18, 2025).
[4] *Id.*, at 253:6-10.

2

concludes: "Ms. Grenier did not merely provide legal advice to Travelers' adjusters regarding the claim here. She was actively involved in making the decision to deny coverage and drafted portions of Travelers' coverage determination letters. . . . Her status as legal counsel cannot shield her communications or testimony in this regard." *Id.* at 10-11.

In response to the motion, Travelers asserts first that it is untimely pursuant to Local Rule 7(b)(2)(C), which provides that "[a] party must file a discovery motion sufficiently in advance of the discovery deadline to allow response to the motion, ruling by the court, and time to effectuate the court's order before the discovery deadline." At the time the motion was filed, the discovery deadline was October 10, 2025. Accordingly, a motion filed by September 18, 2025, would not have allowed time for a ruling by the court, and time to effectuate the court's order. However, on October 10, 2025, Attala moved for an extension of the fact discovery and dispositive motions deadlines, as well as the trial date. While Travelers opposed the motion, the motion was ultimately granted in part, and the undersigned extended the fact discovery deadline to December 30, 2025, and the dispositive motions deadline to January 30, 2026. [Doc. 201]. Judge Brown also reset the trial date for June 22, 2026. [Doc. 204]. Accordingly, the timeliness issue is no longer a concern.

Nonetheless, Travelers argues that even if not untimely, the documents are protected by "one of the most important tenets of the rule of law—the attorney-client privilege." [Doc. 176] at 6. Noting that a federal court sitting in diversity applies state law to attorney-client privilege issues, Travelers cites *Dunn v. State Farm Fire & Cas. Co.*, 927 F.2d 869, 875 (5th Cir. 1991), explaining that in Mississippi, attorney-client privilege protects "any confidential communication made to facilitate professional legal services to the client" and made by or between the client, the client's representative, the lawyer, and the lawyer's representative. *See, Hewes v. Langston*, 853 So. 2d 1237, 1244 (Miss. 2003); MISS. R. EVID. 502(b). "[T]he privilege relates to and covers **all**

3

**information** regarding the client received by the attorney in his professional capacity and in the course of his representation of the client." *Id.* (emphasis in original) (quoting *Barnes v. State*, 460 So. 2d 126, 131 (Miss.1984)); *see also Nationwide Mut. Ins. Co. v. Gum Tree Prop. Mgmt., LLC*, No. 1:12CV181-SA, 2013 WL 12178125, at *3 (N.D. Miss. Nov. 27, 2013) ("The privilege protects more than just the advice and analysis of an attorney, and communications need not be limited to purely legal advice in order for the privilege to attach. The communications need only facilitate the rendition of legal services or advice." (internal quotations and citations omitted)).

In this case, the documents at issue are, according to Travelers, communications made by or to Travelers' in-house staff attorney, Attorney Grenier, in her rendition of legal advice to her clients – Travelers' claims personnel. This rendition of legal advice is consistent with Attorney Grenier's duties as in-house counsel with respect to her in-house clients. And, as for Attala's contention that Attorney Grenier "participated in Travelers' investigation of the loss, including the review of its expert reports and the preparation of Travelers' coverage denial letters" and therefore has "personal knowledge of the basis for the coverage denial" as well as "personal knowledge regarding Travelers' interpretation of the policy provisions at issue—akin to a claim's adjuster—and her communications therefore cannot be shielded on the basis of privilege or work product" (Memorandum at p. 10), such is factually inaccurate and Attala's sole reliance on *Travelers Pro. Cas. Co. of Am. v. 100 Renaissance, LLC*, 308 So. 3d 847 (Miss. 2020), is ill-founded, as that case is "wholly distinguishable and inapposite…" [Doc. 176] at 8.

Travelers argues in its memorandum that the *100 Renaissance* case merely held that where a claims representative who had signed the denial letter in question was repeatedly unable to answer even the most basic questions about the relevant coverage determination at her deposition, the court could conclude that it was evident that the denial letter "was prepared by someone other

4

than [the adjuster], most likely [in-house counsel]. If so, [in-house counsel] did not act as legal counsel and give advice to [the adjuster] to include in the denial letter. Instead, the denial letter contained [in-house counsel's] reasons to deny the claim. [The adjuster's] signature was simply an effort to hide the fact that [in-house counsel], not [the adjuster], had the personal knowledge of Travelers' reasons to deny the claim and to use the attorney-client privilege as a sword to prevent Renaissance from discovering the reasons from the person who had personal knowledge of the basis to deny the claim." [Doc. 176] at 8-9, *citing 100 Renaissance* at 855.

In the instant case, Travelers asserts Plaintiff's insurance claim was handled at all times by Travelers' claim employees, primarily Greg Bynum, the Travelers claim representative who signed the coverage declination letter sent to Plaintiff. Unlike in *100 Renaissance*, Mr. Bynum held a central role in the decision-making process and had personal knowledge of the basis for the denial of coverage. Travelers writes:

> In fact, Plaintiff's counsel questioned Mr. Bynum over two deposition sessions, during which Mr. Bynum provided Plaintiff's counsel detailed and lengthy testimony concerning *his* investigation of the claim, *his* coverage decision (as articulated in the July 11, 2023 denial letter), the reasons therefor, and *his* extensive personal knowledge about the claim. (*See generally* Exs. 2-3). While Mr. Bynum stated he consulted with Attorney Grenier with respect to legal elements of the coverage analysis, he never suggested that Attorney Grenier made the ultimate coverage decision or provided the legal basis to deny Plaintiff's claim; she did not.

[Doc. 176] at 10.

In short, Travelers contends the simple fact that a claims professional seeks the advice of an in-house attorney during the pendency of a claim does not mean that attorney has assumed the role of a claims adjuster, nor does it have any bearing on Travelers' assertion of the attorney-client privilege. *See Dunn,* 122 F.R.D. at 509-10 ("An attorney can play an important role in adjusting an insurance claim, especially since an insurer can be assessed punitive damages for ignoring its legal obligations to the insured. State Farm retained attorneys to ascertain its legal obligations to

5

the Dunns; consequently, any communication between State Farm and its attorneys is privileged. State Farm did not waive the attorney-client privilege by assigning its attorneys investigative tasks and the privilege includes more than legal advice and opinions."(internal citations omitted))*; see also Nationwide Mut. Ins. Co.*, 2013 WL 12178125, at *3 (N.D. Miss. Nov. 27, 2013).

In this case, I find that the testimony of Travelers' adjuster, Mr. Bynum, establishes that Attorney Grenier did not act in the capacity of a claims adjuster in connection with the claim. Rather, Mr. Bynum was, at all relevant times, responsible for the adjustment of the claim. Consequently, *100 Renaissance* is inapposite.

Perhaps tellingly, Attala filed no reply to Travelers' responsive memorandum.

In consequence of the foregoing, I find that the motion to compel is not well taken. Attala's argument that the claimed attorney-client privilege has been waived is premised on a factual scenario set forth in *100 Renaissance* that is not at issue in the instant case.

**THEREFORE**, Attala's motion to compel [Doc. 163] shall be and is hereby **DENIED.**

**SO ORDERED** this, the 17th day of November, 2025.

/s/ Jane M. Virden
**UNITED STATES MAGISTRATE JUDGE**