IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

ATTALA STEEL INDUSTRIES, LLC                                      PLAINTIFF

V.                                                      NO. 4:24-CV-53-DMB-JMV

THE TRAVELERS INDEMNITY
COMPANY OF AMERICA                                                DEFENDANT

## ORDER

After The Travelers Indemnity Company of America denied insurance coverage for damage to Attala Steel Industries, LLC's steel galvanizing kettle and furnace, Attala sued Travelers alleging breach of contract and other claims. Travelers moves to dismiss five of the amended complaint's seven counts on arguments that their allegations fail to state claims against it upon which relief can be granted. Because the Court concludes that Counts Two, Three, Four, and Five fail to state viable claims against Travelers, the motion to dismiss will be granted in part.

## I
## Procedural History

On May 13, 2024, Attala Steel Industries, LLC, filed a seven-count complaint in the Circuit Court of Attala County, Mississippi, against The Travelers Indemnity Company of America alleging "wrongful denial of insurance coverage with respect to losses sustained by [it] due to physical damage to [its] steel galvanizing kettle and furnace [in] Kosciusko, Mississippi." Doc. #3 at 2. Asserting diversity jurisdiction, Travelers removed the case to the United States District Court for the Northern District of Mississippi on June 12, 2024. Doc. #1. With leave of the Court, Attala filed an amended complaint against Travelers on August 19, 2024. Doc. #35. The amended complaint contains seven counts in its "Causes of Action" section: (1) Breach of Contract (Count One); (2) Declaratory Judgment (Count Two); Texas Prompt Payment of Claims

Act (Count Three); Attorneys' Fees (Count Four); Texas Unfair or Deceptive Acts or Practices (Count Five); Breach of Good Faith and Fair Dealing (Count Six); and Negligence, Tortious Breach of Contract, and Bad Faith (Count Seven). *Id.* at 10–17.

On April 1, 2025, pursuant to Federal Rule of Civil Procedure 12(b)(6), Travelers filed a motion to dismiss five counts of the amended complaint—Counts Two, Three, Four, Five and Seven. Doc. #101 at 1. Attala responded in opposition to the motion to dismiss on April 3; and Attala replied on April 7. Docs. #104, #106.

## II
## Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "the pleading, on its face, must demonstrate that there exists a plausibility for entitlement to relief." *Young-Trezvant v. Lone Star Coll. Sys.*, No. 23-20551, 2024 WL 2794483, at *1 (5th Cir. May 31, 2024). Though the allegations in the complaint "must be accepted as true and viewed in the light most favorable to the plaintiffs," *Terwilliger v. Reyna*, 4 F.4th 270, 279 (5th Cir. 2021), the Court will not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions," *Aris-Benn v. State Farm Fire & Cas. Ins. Co.*, 495 F.3d 228, 230 (5th Cir. 2007). "The court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Serrano v. Customs and Border Patrol, U.S. Customs and Border Prot.*, 975 F.3d 488, 496 (5th Cir. 2020).

## III
## Factual Allegations

Attala Steel Industries, LLC, is a company that specializes in all aspects of steel manufacturing and steel galvanizing. Doc. #35 at 3. It is a named insured under an "all-risk"

commercial property policy ("Policy") that The Travelers Indemnity Company of America issued to Emperor Tetra Holdings, Inc. *Id.* at 2. The Policy was paid for and executed in Texas, and covers Attala's property in Kosciusko, Mississippi. *Id.*

Attala's manufacturing plant in Kosciusko, Mississippi, has a single galvanizing furnace and kettle as part of its production process. *Id.* at 4. On April 29, 2023, Attala employees discovered that the kettle had sustained physical damage, specifically a hole in the kettle wall, near the bottom corner of the kettle.[1] *Id.* Attala Steel employees also discovered that the molten zinc level of the kettle had lowered and that the molten zinc was leaking out through the kettle hole. *Id.* As the molten zinc leaked out, it entered the space between the outer wall of the kettle and the inner wall of the furnace, as well as other parts of the kettle and furnace. *Id.* As a result of the leak, zinc solidified both inside and outside the kettle, causing direct physical loss of or damage to the kettle, the furnace, and other adjacent areas. *Id.* at 5. As a result of the physical loss or damage sustained, Attala Steel was left without a kettle and a furnace, both of which are necessary for its steel galvanizing operations. *Id.* Attala Steel sustained losses, including loss of business income and extra expenses, during the period that it did not have a functioning kettle and furnace. *Id.* On or around October 2023, the replacement furnace and kettle were installed and functioning, thereby resuming the steel galvanizing operation. *Id.*

On May 1, 2023, "Attala submitted an insurance claim to Travelers for the covered losses incurred and expected to be incurred." *Id.* at 6. On July 11, 2023, Travelers issued a denial letter denying coverage for the losses, relying on "incorrect facts to conclude that the exclusions for faulty workmanship and wear and tear should apply." *Id.* Specifically, Travelers relied upon flawed conclusions set forth in a June 20, 2023 report issued by Travelers' consultant, Lucas

---

[1] The kettle is located inside the furnace, and the furnace heats the kettle. Doc. #35 at 4.

Brown of EDT Forensic Engineering & Consulting ("EDT"). *Id.* EDT "incorrectly asserted in its June 20, 2023 report that the alleged omission of dross protection insulation from the kettle was the root cause of the limited-service life experienced by the kettle."[2] *Id.* (internal quotation marks omitted). Mirroring EDT's report, the denial letter states that the subject loss resulted from "accelerated wear and tear" of the kettle and that "[t]he root cause of the accelerated wear and tear, decay and deterioration experienced by the kettle was the omission of dross protection insulation around the lower areas of the kettle when the kettle was installed and commissioned by Attala Steel employees." *Id.* (alteration in original). As EDT later acknowledged, there was dross protection insulation around the kettle at the time the kettle hole occurred. *Id.* The denial letter also claimed, in reliance on EDT's June 20, 2023 report, that there was an excess amount of dross in the which also contributed to the accelerated wear and tear. *Id.* at 6–7. Yet, in the denial letter and the June 20, 2023 EDT report, there is no evidence of any excess amount of dross in the kettle; in fact, there is no evidence of any amount of dross in the kettle. *Id.* at 7. The denial letter and the June 20, 2023 EDT report also do not address Attala Steel's dross removal procedures or provide any reason to assert that Attala Steel's procedures were somehow deficient. *Id.* The denial letter also does not address the scope of losses claimed by Attala Steel or EDT's acknowledgement of such losses. *Id.*

On September 19, 2023, Attala sent a rebuttal letter to Travelers correcting the factual inaccuracies in the denial letter, explaining that there was dross insulation around the kettle, explaining to Travelers why EDT's investigation and testing were wholly inadequate, and

---

[2] "Dross is a natural byproduct of any galvanizing process, and it manifests in the form of particles that build up within the kettle over time. Routine dross removal is standard practice in any steel galvanizing operation." Doc. #35 at 6 n.4.

4

explaining the several alternative reasons for why Travelers was required to provide coverage under the Policy.[3] *Id.* at 8.

On October 20, 2023, Travelers and EDT requested more documents and photographs from Attala, which were provided to Travelers seven days later. *Id.* On November 3, 2023, Travelers and EDT requested a fourth inspection of the property. *Id.* After Brown conducted a fourth inspection of the property on November 9, 2023, EDT issued a supplemental report on December 5, 2023, acknowledging that there was insulation surrounding the kettle at the time of the loss but maintained its position that there was excess dross in the kettle. *Id.* at 9. On December 8, 2023, Travelers cited EDT's supplemental report to reiterate its denial of coverage in a renewed denial letter. *Id.* As of the date of Attala's amended complaint, Travelers has refused to acknowledge coverage for the Claim and has not issued any payment to Attala Steel. *Id.* at 10. As a result of Travelers' wrongful denial of coverage, Attala has sustained and will continue to sustain significant losses including but not limited to property damage, business income losses, extra expenses, additional equity payments, increased interest fees, and any other consequential losses. *Id.*

## IV
## Analysis

In seeking to dismiss Counts Two, Three, Four, Five, and Seven, Travelers argues that (1) Count Two "is redundant and contributes nothing to the action [since] [a]ll of the insurance coverage and legal issues germane to that cause of action will be resolved in the context of

---

[3] "Attala … explained the several alternative reasons why Travelers must provide coverage based upon the relevant Policy terms and law, including (a) the physical damage triggers coverage under the "all-risk" policy, (b) the asserted exclusions are inapplicable where, e.g., the original denial relied upon a "root cause" of a lack of insulation, which is demonstrably false, (c) regardless of the cause of the thinning kettle, the hole constitutes a covered fortuitous loss that was unexpected by Attala Steel, (d) regardless of the cause of the hole in the kettle, the loss would fall within the ensuing loss exception to the faulty work and/or wear and tear exclusions, and (e) regardless of all other factors, the equipment breakdown coverage independently affords coverage as well." Doc. #35 at 8 (emphasis omitted).

[Attala's] claim for breach of contract;" (2) Count Four "fails because Mississippi choice-of-law rules hold that a party's entitlement to attorney's fees in prosecuting or defending a civil action is a procedural matter that is governed by the law of the forum (Mississippi);" and (3) Counts Three, Five, and Seven "must be dismissed because Mississippi classifies them as tort-based causes of action, and application of the factors prescribed by Section 145 of the Restatement (Second) of Conflict of Laws compels the conclusion that Mississippi has the most significant relationship to the parties and their dispute." Doc. #103 at 2–3.

Attala responds that "(1) [it] has properly pled claims under the Texas statutes and common law; (2) there is not a true conflict of laws; and (3) even if there was a conflict of laws, Mississippi choice of law rules require the application of Texas substantive law." Doc. #105 at 2.

Travelers replies that Attala's choice of law arguments are fundamentally flawed because "Counts Three, Five and Seven all sound in tort not contract." Doc. #106 at 2.

### A. Counts Two, Three, Four, Five, and Seven

The amended complaint alleges in Count Two that "[a] declaratory judgment is necessary and appropriate to determine the rights and duties of Travelers and Attala Steel pursuant to the Policy;" in Count Three that, "[d]espite demand by Plaintiff, Travelers has failed and refused and continues to fail and refuse to pay the monies due Attala Steel in accordance with the terms of the Policy and Tex. Ins. Code Ann. § 542.01 … ('Prompt Payment of Claims Act');" in Count Four that "[p]ursuant to Chapter 38 of the Texas Civil Practice and Remedies Code, Attala Steel [is entitled to] an award of attorneys' fees;" in Count Five that "[t]he conduct of Travelers, including its investigation, processing, and delaying or refusing payment of Attala Steel's losses, constitutes multiple violations of Tex. Ins. Code. Ann. § 541.001 … and § 542.003;" and in Count Seven that "[t]he conduct of Travelers was of such a malicious, intentional, willful, wanton, illegal, and

6

grossly negligent character, undertaken in conscious disregard for the rights of Attala Steel, that the conduct rose to the level of an independent tort, constituted tortious breach of contract, and warrants the imposition of punitive and/or extra-contractual damages to an extent required to deter Travelers from like or similar conduct in the future." Doc. #35 at 11–17.

### 1. Count Two

Travelers argues that Count Two should be dismissed because "[c]ourts in this Circuit regularly dismiss claims for declaratory judgment at the pleading stage where they seek resolution of issues that will be resolved as part of the substantive legal claims of the lawsuit," and "the adjudication of Plaintiff's breach of contract claim will resolve all issues of law and insurance coverage that are raised in Plaintiff's claim for declaratory judgment."[4] Doc. #103 at 26–27, 28.

Attala responds that "a Declaratory Judgment is necessary to resolve the issues between the parties about how the Policy exclusions should be interpreted, so that an adjustment of the claim can continue" since "[it] and Travelers disagree on the meaning and interpretation of the Policy language, and how they should be applied to the facts." Doc. #105 at 16–17. It also responds that "[u]nder Texas law, the relief sought under a Declaratory Judgment Count differs from the relief sought under a Breach of Contract Count," and "[l]ikewise, under Mississippi law, there are two criteria to consider when bringing a Declaratory Judgment Count, … (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceedings." *Id.* at 17 (quoting *UHS-Qualicare, Inc. v. Gulf Coast Cmty. Hosp., Inc.*, 525 So. 2d 746, 753 (Miss. 1987)).

---

[4] Travelers also argue that "Count Two is a near mirror image of Count One, except that instead of demanding money damages for Travelers' declination of coverage, it seeks 'a declaration that Travelers provide coverage for [Attala's] loss as set forth in all the paragraphs herein.'" Doc. #103 at 27 (quoting Doc. #35 at 17).

7

Travelers replies that "while [Attala] insists its claim for declaratory relief (Count Two) is not redundant, [Attala] ignores the authority from this Circuit … dismissing declaratory judgment claims in identical circumstances;" and "[Attala]'s reliance on Texas and Mississippi authority on this point is misplaced." Doc. #106 at 7 n. 4.

In cases where a plaintiff asserts two independent causes of action for breach of contract and declaratory judgment, the Fifth Circuit makes clear that the declaratory judgment "is merely a theory of recovery" for the breach of contract claim, *Smitherman v. Bayview Loan Servicing, LLC*, 727 F. App'x 787, 792 (5th Cir. 2018) (quoting *Sid Richardson Carbon & Gasoline Co. v. Interenergy Res., Ltd.*, 99 F.3d 746, 752 n.3 (5th Cir. 1996)), that "does not provide an additional cause of action with respect to the underlying claim," *Smitherman*, 727 Fed. App'x at 792 (quoting *Okpalobi v. Foster*, 244 F.3d 405, 423 n.31 (5th Cir. 2001) (en banc)). When evaluated under a Rule 12(b)(6) motion, a declaratory judgment claim seeking resolution of issues already subject to adjudication by the court warrants dismissal. *Regus Mgmt. Grp., LLC v. Int'l Bus. Mach. Corp.*, No. 3:07-CV-1799, 2008 WL 2434245, at *2 (N.D. Tex. June 17, 2008).

Attala's breach of contract claim in Count One asserts that "Travelers has breached its contractual obligations owed under the Policy to Attala." Doc. #35 at 11. Similarly, Count Two, Attala's declaratory judgment claim, asserts that "[a] dispute has arisen between Attala … and Travelers regarding whether Travelers is obligated to provide coverage under the Policy in connection with the Claim." *Id.* "In certain breach of contract contexts, district courts have concluded that a declaratory judgment is unnecessary because 'resolving the breach of contract claim would resolve any future uncertainty' between the parties." *Robinson v. Hunt Cnty.*, 921 F.3d 440, 450 (5th Cir. 2019) (quoting *Flanagan v. Chesapeake Exp.*, LLC, No. 3:15-CV-0222, 2015 WL 6736648, at *5 (N.D. Tex. Nov. 4, 2015)). Given this, and the lack of distinction between

Attala's breach of contract and declaratory judgment claims, Count Two will be dismissed. *See Albritton Props. v. Am. Empire Surplus Lines*, No. 3:04-CV-2531, 2005 WL 975423, at *3 (N.D. Tex. Apr. 25, 2005) ("[T]he Court must necessarily determine the parties' rights and duties under the Policy in order to decide the breach of contract action. As such, a declaratory judgment would simply duplicate this determination.").

### 2. Choice of law analysis - Counts Three, Four, Five, and Seven

Travelers argues that application of Mississippi's choice-of-law principles warrant dismissal of Counts Three, Four, Five, and Seven because "none plead[] a cause of action recognized in Mississippi."[5] Doc. #103 at 7; *see generally id.* at 7–24.

Attala responds that (1) "applying Mississippi choice-of-law principles to this case, Texas law should apply to the instant policy which was negotiated, contracted, and issued in Texas;" (2) it "alleges sufficient facts to sustain … cause[s] of action for relief under [Counts Three, Four, Five, and Seven];" (3) "there is no reason for the Court to apply any Restatement test to determine whether the Texas statutory claims are viable in this venue;" (4) "there is … no conflict of law because Counts Three, Four, and Five are statutory, and do not offend any public policy of Mississippi;"[6] (5) "Mississippi law unequivocally recognizes the Claims pled in Count Seven …, rendering Traveler's [sic] choice-of-law argument moot;" and (6) "[e]ven if there was a conflict

---

[5] Travelers begins its choice-of-law argument by claiming that for each count, there is no analogous Mississippi law, thus a true conflict exists between Mississippi and Texas. Doc. #103 at 7. For Counts Three, Five, and Seven, Travelers applies Section 145 of the Restatement (Second) of Conflict of Laws and finds that "Mississippi has the most significant relationship to the parties and their dispute," and "[s]ince Mississippi law does not recognize the statutory causes of action pled in Counts Three and Five or the remedies pled in Count Seven, those counts fail to state a plausible claim of relief." *Id.* at 3. As it relates to Count Four, Travelers argues that it "purports to assert a statutory claim for attorneys fees …, but relies on 'Chapter 38 of the Texas Civil Practice and Remedies Code.' Because the law of Mississippi … governs a party's entitlement to attorneys' fees, Count Four fails to state a claim and should be dismissed." *Id.* at 10 (internal citation omitted).

[6] Attala relies on *Name Intelligence, Inc. v. McKinnon*, No. 2:10-cv-01202, 2013 WL 1793953 (D. Nev. Apr. 26, 2013). Doc. #105 at 10–11. Travelers rebuts by noting that *Name Intelligence* is inapposite to the present case because there, "the law and public policy of the two states did not conflict[, which] is not true in this case." Doc. #106 at 5.

of law, … Travelers['] Motion to Dismiss must be denied because Texas law controls pursuant to Mississippi's choice-of-law analysis."[7]  Doc. #105 at 6, 9, 11, 12.

In reply, Travelers counters that Attala's "reliance on Section 188 [of the Restatement (Second) of Conflict of Laws] is misplaced because Counts Three, Five and Seven all sound in tort, not contract;" and Count Five should be dismissed on the additional ground that Attala "fails to identify any allegation of an unfair or deceptive act or practice committed by Travelers within Texas" as required by Texas Insurance Code § 541.003.  Doc. #106 at 2, 7 (emphasis omitted).

Before the Court determines whether Attala has stated claims upon which relief can be granted, it must conduct a choice of law analysis to determine whether Mississippi or Texas law applies.  *See Williams v. Liberty Mut. Ins. Co.*, 741 F.3d 617, 619 (5th Cir. 2014) ("[T]he choice of which state's law applies is crucial to [a plaintiff's] ability to state a claim upon which relief can be granted.").

### a.  Choice of Law Standard

A federal court sitting in diversity must apply the choice of law rules of the forum state to determine which state's law applies.  *Hartford Underwriters Ins. Co. v. Found. Health Servs. Inc.*, 524 F.3d 588, 593 (5th Cir. 2008).  "In Mississippi, choice-of-law analysis arises only when there is a true conflict between the laws of two states, each having an interest in the litigation." *Williams*, 741 F.3d at 620.  Once a true conflict is established, courts conduct a three-step analysis:

> (1) Determine whether the laws at issue are substantive or procedural. If they are procedural, the inquiry ends and Mississippi law applies. (2) If substantive, classify the laws as either tort, property, or contract; and (3) look to the relevant section of the Restatement (Second) of Conflict of Laws. With regard to the last step,

---

[7] Attala conducts its choice-of-law analysis by applying the factors and principles under the Restatement (Second) of Conflict of Laws §§ 188 and 6.  Doc. #105 at 13–16.  It also submits that "Travelers inappropriately relies on Restatement § 193" in conducting its choice-of-law analysis.  *Id.* at 14.  But as noted by Travelers, "[it] made no mention of Section 193 … in its moving brief."  Doc. #106 at 3.

> Mississippi resolves conflict-of-laws questions using the significant relationship test found in the Restatement (Second) of Conflict of Laws (1971).

*Id.* at 620–21 (cleaned up).

### b.   True Conflict of Law

Travelers submits that Mississippi does not recognize the causes of action asserted in Counts Three, Four, Five, and Seven.  A review of Texas' Insurance Code, its Civil Practice and Remedies Code, and Mississippi's Insurance Code reveals that Mississippi has not enacted statutes similar to that on which Attala relies for Counts Three, Four, and Five of the amended complaint. Accordingly, a true conflict exists as it relates to these counts.

Travelers contends that Count Seven "commingles principles of contract and tort law in a single purported cause of action" and "[w]hile Mississippi law recognizes a cause of action for tortious breach of contract, it does not provide for 'Prompt Pay Act penalties' or 'multiple damages' similar to those afforded in Texas by Chapter 541[, and t]hus a true conflict of law exists … as to Count Seven."  Doc. #103 at 9.  The Court agrees with Attala that "[t]his argument is inappropriate for a motion to dismiss because it is a defense to damages – not whether Attala … has failed to state a claim."  Doc. #105 at 12 (emphasis omitted).  "A 12(b)(6) motion concerns causes of actions, not remedies. So 'whether a claim for relief should be dismissed under Rule 12(b)(6) turns not on whether all of the relief asked for can be granted, but whether the plaintiff is entitled to any relief.'"  *Greathouse v. Cap. Plus Fin. LLC*, 690 F. Supp. 3d 610, 640 (N.D. Tex. 2023) (quoting *Mott's, LLP v. Comercializadora Eloro, S.A.*, 507 F. Supp. 3d 780, 791 (W.D. Tex. 2020)).  Because Mississippi law recognizes a cause of action for negligence, tortious breach of

11

contract, and bad faith,[8] there is no true conflict between the laws of Texas and Mississippi regarding Count Seven.

Based on the above, a true conflict exists between Texas and Mississippi law only as it relates to Counts Three, Four, and Five.

### c. Substantive or Procedural Issues

"In Mississippi, few laws are classified as procedural and for choice of law purposes the Mississippi Supreme Court has labeled as procedural only rules of evidence and procedure, statutes of limitations, and awards of attorney's fees and interest." *Hartford Underwriters*, 524 F.3d at 593 (internal quotation marks and citation omitted). Applying this principal to Count Four, the Court concludes that because the award of attorneys' fees is procedural and governed by Mississippi law, Attala's request for such under Chapter 38 of the Texas Civil Practice and Remedies Code is dismissed for failure to state a claim upon which relief can be granted.

To the extent Counts Three, Five, and Seven require classification as substantive or procedural, when "resolution of an issue determines whether [the plaintiff] has … a viable cause of action, … the issue is substantive." *Williams*, 741 F.3d at 621 (alterations and second omission in original) (internal quotation marks and citation omitted). Because resolution of Counts Three, Five, and Seven determine whether Attala has viable causes of action, the Court concludes that they are substantive in nature. *Id.* ("We agree that the issue in this case is a substantive rather than procedural matter because it determines whether [the plaintiff] has a viable cause of action.").

---

[8] "A tortious breach of contract is a breach of contract coupled with 'some intentional wrong, insult, abuse, or negligence so gross as to constitute an independent tort.'" *Robinson v. S. Farm Bureau Cas. Co.*, 915 So. 2d 516, 520 (Miss. Ct. App. 2005) (quoting *Wilson v. Gen. Motors Acceptance Corp.*, 883 So. 2d 56, 66 (Miss. 2004)). "When an insured makes a claim against his policy, the insurer must perform a prompt and adequate investigation and make a reasonable, good faith decision based on that investigation …. To prevail on a bad faith claim, a plaintiff carries the heavy burden to prove that his insurer lacked any arguable basis for its decision." *United Servs. Auto. Ass'n v. In re Est. of Minor.*, 418 So. 3d 1173, 1182 (Miss. 2024) (internal quotation marks and citations omitted).

### d. Classification of Issues

"Mississippi law determines whether a matter is properly characterized a tort or a contract because that inquiry is part of Mississippi's choice-of-law rules." *Williams*, 741 F.3d at 621.

Travelers argues that the issues in Counts Three, Five, and Seven are classified as torts. Doc. #103 at 11. Attala contends the opposite, arguing that those issues are governed by contract law. Doc. #105 at 13.

Mississippi courts do not appear to have specifically characterized the issues in Counts Three and Five. However, in *Williams*, the Fifth Circuit applied Restatement (Second) of Conflict of Laws Section 145 to a dispute by an employee against his employer's insurer because of the insurer's alleged intentional, bad faith refusal to pay worker's compensation benefits to the employee. *Williams*, 741 F.3d at 622–23. Following that same approach, the issues in Counts Three and Five sound in tort. The same can be said of Travelers' alleged conduct that gives rise to Count Seven, which Attala admits "[give rise] to the level of an independent tort." Doc. #35 at 17.

As Counts Three, Five, and Seven sound in tort, the Court applies Section 145 of the Restatement (Second) of Conflict of Laws. *Ellis v. Trustmark Builders, Inc.*, 625 F.3d 222, 226 (5th Cir. 2010).

### e. Significant Relationship Test

The general rule is that "Mississippi courts will apply the law of the place of injury unless another state has a more substantial relationship to the action." *Davis v. Nat'l Gypsum Co.*, 743 F.2d 1132, 1133 (5th Cir. 1984) (citation omitted). In assessing such, "Section 145 of the Restatement … suggests types of contacts that should be considered for such a determination: … (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred,

13

(c) the domicil[e], residence, … place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." *Ellis*, 625 F.3d at 226.

### i.   Section 145 Contacts

As to the place where the injury occurred, the amended complaint alleges that the damage to the kettle and furnace occurred at Attala's manufacturing plant in Kosciusko, Mississippi. Doc. #35 at 4–5. Travelers argues that "the injuries alleged by [Attala] – including the underlying physical damage to its property, the alleged loss of Business Income, and Extra Expenses, as well as pre-judgment and post-judgment interest and consequential damages – were sustained by [Attala] at the Kosciusko Plant." Doc. #103 at 13. Because Attala felt the effects of all the injuries it alleges in Mississippi, Mississippi is the place where the injury occurred. *See Trammell Crow Residential Co. v. Virginia Sur. Co., Inc.*, No. 3:08-CV-0685, 2009 WL 3353035, at *5 (N.D. Tex. Oct. 16, 2009) ("[A]ny injury occurred in Texas, where the insured resided and ultimately would have felt the effects of any bad faith denial of coverage.").

As to the place where the conduct causing the injury occurred, Travelers argues this contact favors the application of Mississippi law because "the content of the incorporated Engineer's reports establish that the bulk of [its] investigation –including the inspection, measurement, photo-documentation, and sampling of the Kettle and other property and the interviews of [Attala's] employees – took place at the Kosciusko Plant." Doc. #103 at 18 (citation omitted). However, Travelers fails to note that, in addition to the plant inspections conducted by Brown, the denial letters dated July 11, 2023 and December 8, 2023, were issued from Buffalo, New York,[9] and the reports by EDT, dated June 20, 2023, and December 5, 2023, which it relied on in denying

---

[9] Doc. #35-5 at PageID 1874; Doc. #35-9 at PageID 2018.

coverage to Attala, were issued from Birmingham, Alabama.[10]  Accordingly, the Court concludes that the conduct causing the injury to Attala occurred in Mississippi, New York, and Alabama. *See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Am. Eurocopter Corp.*, 692 F.3d 405, 408–09 (5th Cir. 2012) (conduct causing injury incurred in Hawaii, Texas, Nevada, and France); *see also Trammell*, 2009 WL 3353035, at *5 ("The conduct causing the injury occurred in Illinois where any claim handling in regards to Trammell Crow's policy took place.").

As to the domicile, place of incorporation, and place of business of the parties, "the importance of these contacts depends largely upon the extent to which they are grouped with other contacts." *Nat'l Union*, 692 F.3d at 409.  Attala is a citizen of Delaware, Kentucky, Georgia, Pennsylvania, and Texas, as determined by its members, and has its principal place of business in Mississippi; and Travelers is a citizen of Connecticut, where it is incorporated and maintains its principal place of business.  Doc. #65 at 3–5.  So far, the only connection Texas has with this case under the Restatement § 145 factors is that five out of ten of Attala's members are domiciled there. Doc. #65 at 4–5; *see In re Air Disaster at Ramstein Air Base, Germany, on 8/29/90*, 81 F.3d 570, 577 (5th Cir. 1996) ("Texas on the other hand, has its only relevant contacts with this case in the fact that many, but not all, of the plaintiffs are domiciled there."). "Because both the case law and the Restatement instructs us to place more emphasis on the place of the alleged misconduct, than on the residential preferences of scattered plaintiffs," *id.*, the Court concludes that this contact slightly favors the application of Mississippi law or, alternatively, is neutral since there are both Mississippi and Texas contacts involved here.

As to the place where the parties' relationship is centered, Travelers argues that this contact favors the application of Mississippi law because "Mississippi was the state in which the parties

---

[10] Doc. #35-6 at PageID 1880; Doc. #35-8 at PageID 1955.

interacted in regard to [Attala's] insurance claim[;] [a]ll of their dealings during the investigation of the claim were centered at the Kosciusko Plant, where all efforts to examine and gather physical evidence (from on-site inspection) and information (through employee interviews) took place[;] [and] the Denial Letter, the Second Denial Letter, and other correspondence regarding the claim were sent to and received by Plant Manager Clyde Ferrell at the Kosciusko Plant." Doc. #103 at 20. The Court agrees.

Attala's manufacturing plant in Kosciusko, Mississippi, is the only place giving rise to its communications with Travelers and where all the investigative procedures regarding the damaged kettle and furnace took place. Accordingly, this contact favors application of Mississippi law. *See Price v. Litton Sys. Inc.*, 784 F.2d 600, 604 (5th Cir. 1986) ("Alabama is the center of the relationship of the parties. In fact, Alabama is the only location where the decedents came in contact with the products of the defendant. No other place conceivably could be the center of the parties' relationship.").

ii.     *Section 6 Considerations*

The Restatement also instructs that the weighing of [the] tort-specific factors should be guided by the seven general choice-of-law considerations set out in § 6:

(a) the needs of the interstate and international systems,
(b) the relevant policies of the forum,
(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
(d) the protection of justified expectations,
(e) the basic policies underlying the particular field of law,
(f) certainty, predictability and uniformity of result, and
(g) ease in the determination and application of the law to be applied.

*Ellis*, 625 F.3d at 226.

First, there is no indication that whether the Court applies Mississippi or Texas law, the needs of the interstate system between the two states will be implicated, so this consideration is

16

neutral. *See Richardson v. Clayton & Lambert Mfg. Co.*, 634 F. Supp. 1480, 1484 (N.D. Miss. 1986) ("In the instant case it appears that no matter what law this court applies, it will not affect the needs of the interstate and international systems.").

Second, Travelers submits that the policies of Mississippi favor application of Mississippi law because "[Attala] is a Mississippi company with its roots in Kosciusko[, and s]ince its founding in 2005, [Attala] has employed Mississippi citizens at its Kosciusko Plant, has paid state and municipal taxes in Mississippi, and presumably has contributed to the state and local economies in other ways;" "the vast majority of the conduct alleged … occurred in Mississippi;" and "the public policy of Mississippi takes precedence over Texas or any other state in regard to the regulation of that alleged conduct or providing a remedy to Mississippi companies allegedly harmed by it." Doc. #103 at 22–23. The Court agrees.

There can be no doubt that Mississippi has an interest in, and a policy of, having its law applied in suits brought by a Mississippi-based company. *See Dale v. Ala Acquisitions I, Inc*., 434 F. Supp. 2d 423, 435 (S.D. Miss. 2006) ("Mississippi's only interest is in ensuring that the Mississippi plaintiffs are adequately compensated. It has little or no interest in protecting the nonresident [defendant].").

Third, Travelers contends that "Texas could claim no interest in regulating alleged misconduct of an insurance company that occurs outside its borders, that allegedly injures a citizen of Mississippi, and that relates to a claim for damage to property or the interruption of manufacturing operations located in Mississippi." Doc. #103 at 23. To the contrary, Attala responds by noting only that "Texas has an interest in protecting its citizens from deceptive and unfair practices, and in ensuring that they are paid promptly, and enacted its statutory scheme to enforce those interests." Doc. #105 at 14. To the extent "Texas has an interest in ensuring that

17

Texas insurance companies refrain from disreputable business practices and timely pay valid claims," *Gov't Personnel Mut. Life. Ins. Co. v. Lincoln Factoring*, No. 02-21-00090, 2022 WL 3097289, at *8 (Tex. App. Aug. 4, 2022), Travelers is an insurer incorporated in Connecticut and predominately conducts its business there, not Texas. Accordingly, this consideration is neutral.

Fourth, Travelers submits that the justified expectations and certainty, predictability, and uniformity of result weigh in favor of applying Mississippi law because as Attala's "insured property and its operations are in Mississippi, [Attala] could have no reasonable expectation that Texas law – or, for that matter, the laws of Maine, Florida, or Hawaii – would provide a remedy for alleged misconduct by Travelers in investigating and responding in Mississippi to an insurance claim presented in Mississippi for damage to [Attala's] Mississippi property and interruption of business operations occurring exclusively in Mississippi," and "[b]y the same token, Travelers reasonably would expect that the law of Mississippi would apply to any cause of action that might arise from its handling and denial of coverage for such an insurance claim." Doc. #103 at 23. The Court concurs.

The record indicates that Travelers was well aware of Attala's operations in Mississippi given that Attala is specifically named as an insured under the policy, which includes the addresses of Attala's locations and buildings—all of which are in Mississippi. Doc. #35-1 at PageID 1684–85, 1687. Based on this, Travelers could have reasonably expected any lawsuits related to Attala could arise in Mississippi. *See Hartford*, 524 F.3d at 599 ("[T]he record confirms that Hartford was aware that Magnolia's nursing homes were located in Mississippi, and they are identified by address in the relevant policies. Hartford should have reasonably expected that when it insured Magnolia's nursing homes in Mississippi, suits may be filed against Magnolia in Mississippi,

18

triggering Hartford's duty to defend in Mississippi state court.").  Accordingly, this consideration weighs in favor of applying Mississippi law.

Fifth, "a number of policies, such as the deterrence of tortious conduct and the provision of compensation for the injured victim, underlie the tort field." *Brinkley & West, Inc. v. Foremost Ins. Co.*, 499 F.2d 928, 932 n.15 (5th Cir. 1974).  But because "[t]hese policies are likely to point in different directions in situations where the important elements of an occurrence are divided among two or more states," *id.*, the Court concludes this consideration is neutral.

Sixth, to the extent Travelers submits that "[w]ere the Court to apply Texas law to Counts Three, Five, or Seven, rather than Mississippi law, it would dramatically undermine the certainty and predictability of the outcome of any such civil action,"  Doc. #103 at 23 (emphasis omitted), the Fifth Circuit has stated that this consideration "is inapplicable to the torts area for generally parties do not give thought to the problem of applicable law in planning their transactions." *Brinkley*, 499 F.2d at 932 n.15 (internal quotation marks omitted).  Accordingly, this consideration is neutral.

Finally, because there is no indication that the Court will experience difficulty in applying either Mississippi or Texas law, this consideration is neutral.

### 3.  Summary

Keeping in mind that "[c]ourts should evaluate [the Restatement § 145] contacts for their quality, not their quantity," *Spence v. Glock*, *Ges.m.b.H.*, 227 F.3d 308, 312 (5th Cir. 2000), and that the balancing of the § 6 considerations predominately weigh in favor of Mississippi law, the Court concludes that Mississippi law applies.  Accordingly, Counts Two, Three, Four, and Five of the amended complaint will be dismissed.

**V**
**Conclusion**

The motion to dismiss [101] is **GRANTED in Part and DENIED in Part**. The motion is GRANTED to the extent Counts Two, Three, Four, and Five of the amended complaint are **DISMISSED**. The motion is DENIED in all other respects.

**SO ORDERED**, this 31st day of March, 2026.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**