**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**GREENVILLE DIVISION**

**ATTALA STEEL INDUSTRIES, LLC** — **PLAINTIFF**

**V.** — **NO. 4:24-CV-53-DMB-JMV**

**THE TRAVELERS INDEMNITY COMPANY OF AMERICA** — **DEFENDANT**

## OPINION AND ORDER

With respect to Attala Steel Industries, LLC's claim that The Travelers Indemnity Company of America wrongfully denied insurance coverage for damage to its steel galvanizing kettle and furnace, Travelers moves to preclude certain opinion testimony from Attala's expert witnesses Shane Kennett and Jared Kaufman under Federal Rule of Evidence 702 and, alternatively, to preclude Kaufman's testimony under Federal Rule of Evidence 403. Because Kennett's testimony and Kaufman's testimony is reliable and relevant, and because at this stage the Court does not find Kaufman's testimony to be needlessly cumulative, Travelers' motions will be denied.

### I
### Procedural History

On May 13, 2024, Attala Steel Industries, LLC, filed a seven-count complaint in the Circuit Court of Attala County, Mississippi, against The Travelers Indemnity Company of America alleging "wrongful denial of insurance coverage with respect to losses sustained by [it] due to physical damage to [its] steel galvanizing kettle and furnace [in] Kosciusko, Mississippi." Doc. #3 at 2. Asserting diversity jurisdiction, Travelers removed the case to the United States District Court for the Northern District of Mississippi on June 12, 2024. Doc. #1. With leave of the Court, Attala filed an amended complaint against Travelers on August 19, 2024. Doc. #35. The

amended complaint contains seven counts: Breach of Contract (Count One); Declaratory Judgment (Count Two); Texas Prompt Payment of Claims Act (Count Three); Attorneys' Fees (Count Four); Texas Unfair or Deceptive Acts or Practices (Count Five); Breach of Good Faith and Fair Dealing (Count Six); and Negligence, Tortious Breach of Contract, and Bad Faith (Count Seven).[1] *Id.* at 10–17.

On March 14, 2025, Attala served its disclosures of two expert witnesses, Shane Kennett and Jared Kaufman. Doc. #87. On September 10, 2025, Travelers moved to strike the Kaufman disclosure as inadequate and preclude his testimony. Doc. #158. After United States Magistrate Judge Jane M. Virden denied the motion to strike as untimely, Doc. #178, Travelers filed an objection to the order, Doc. #195, which this Court overruled, Doc. #322.

On October 10, 2025, Travelers filed a motion to preclude Kennett's expert testimony pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*;[2] and filed a motion to preclude Kaufman's expert testimony pursuant to Rule 702 and *Daubert* or, alternatively, Federal Rule of Evidence 403. Docs. #187, #189. Attala responded to both motions on October 31.[3] Docs. #214, #216. Travelers replied in support of each motion on November 14.[4] Docs. #228, #229.

## II
## Standard

Federal Rule of Evidence 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:

[1] On March 31, 2026, granting in part Travelers' motion to dismiss, the Court dismissed Counts Two, Three, Four, and Five of the amended complaint. Doc. #276.

[2] 509 U.S. 579 (1993).

[3] The Court granted Attala's motion to extend its response deadline until October 31. Doc. #208.

[4] The Court granted Travelers' motion to extend its reply deadline until November 14. Doc. #220.

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

A "district court has wide latitude when navigating the expert-qualification process." *Williams v. Manitowoc Cranes, L.L.C.*, 898 F.3d 607, 625 (5th Cir. 2018). "As long as there are 'sufficient indicia' that an individual will 'provide a reliable opinion' on a subject, a district court may qualify that individual as an expert." *Id*. (quoting *Huss v. Gayden*, 571 F.3d 442, 455–56 (5th Cir. 2009)). In addition to reliability, "expert testimony must be relevant, not simply in the sense that all testimony must be relevant, but also in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue." *Weiser-Brown Operating Co. v. St. Paul Surplus Lines Ins. Co*., 801 F.3d 512, 529 (5th Cir. 2015) (internal citation omitted) (quoting *Bocanegra v. Vicmar Servs., Inc*., 320 F.3d 581, 584 (5th Cir. 2003)).

Under *Daubert*, a district court has a "special obligation … to 'ensure that any and all scientific testimony … is not only relevant, but reliable.'" *Bear Ranch, L.L.C. v. Heartbrand Beef, Inc*., 885 F.3d 794, 802 (5th Cir. 2018) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999)). "To establish reliability under *Daubert*, an expert bears the burden of furnishing 'some objective, independent validation of his methodology.'"[5] *Brown v. Ill. Cent. R.R. Co*., 705

[5] When considering reliability, *Daubert* provides that trial courts should consider (1) "the extent to which a given technique can be tested;" (2) "whether the technique is subject to peer review and publication;" (3) "any known potential rate of error;" (4) "the existence and maintenance of standards governing operation of the technique;" and (5) "whether the method has been generally accepted in the relevant scientific community." *Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007) (citing *Daubert*, 509 U.S. at 593–94). The *Daubert* factors "are not mandatory or exclusive." *Id*. Rather, the district court should consider whether the enumerated factors "are appropriate, use them as a starting point, and then ascertain if other factors should be considered." *Id*. In addition to the specific factors

F.3d 531, 536 (5th Cir. 2013) (quoting *Moore v. Ashland Chem. Inc*., 151 F.3d 269, 276 (5th Cir. 1998)).

Overall, the Court must be mindful that "the fact that … testimony may be assailable does not mean it is inadmissible under Rule 702. The trial court's role as gatekeeper under *Daubert* is not intended to serve as a replacement for the adversary system." *United States v. Ebron*, 683 F.3d 105, 139 (5th Cir. 2012).

## III
## Relevant Factual Background

The Travelers Indemnity Company of America issued an "all-risk" commercial property policy effective January 10, 2023, to January 10, 2024, to Emperor Tetra Holdings, Inc., providing coverage for certain insured entities, including Attala Steel Industries, LLC. Doc. #35 at 2; Doc. #308 at 2. The policy covers Attala's location at 2200 Attala Road 2202, Kosciusko, Mississippi 39090. Doc. #35 at 2; Doc. #308 at 3.

On April 29, 2023, a hole formed in the wall of Attala's steel galvanizing kettle at its 2200 Attala Road location, causing molten zinc to leak out of the kettle. Doc. #35 at 4–5; Doc. #308 at

---

enumerated in *Daubert*, the Advisory Committee's Note to the 2000 Amendment to Rule 702 states that the following five "factors remain relevant to the determination of the reliability of expert testimony:"

> (1) Whether experts are proposing to testify about matters growing naturally and directly out of research they have conducted independent of the litigation, or whether they have developed their opinions expressly for purposes of testifying.
>
> (2) Whether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion.
>
> (3) Whether the expert has adequately accounted for obvious alternative explanations.
>
> (4) Whether the expert is being as careful as he would be in his regular professional work outside his paid litigation consulting.
>
> (5) Whether the field of expertise claimed by the expert is known to reach reliable results for the type of opinion the expert would give.

FED. R. EVID. 702 advisory committee's note to 2000 amendment (internal quotation marks and citations omitted).

4. On May 12, Travelers denied Attala's insurance claim for the resulting losses sustained to the kettle and furnace. Doc. #35-5 at 1.

After being contacted by Attala, Western Technologies, Inc. ("Westech"), the designer and manufacturer of the furnace, inspected the kettle on May 22. Doc. #308-2 at PageID 12338–39. Westech concluded that the "primary cause" of the kettle failure was "incorrect re-assembly of the furnace and insulating systems" because "[w]hen the insulating 'dross protection boards' are correctly fitted and installed there should be minimal heat transfer and thus no chance of a hot spot forming, leading to a hole.'" *Id*. at PageID 12345.

On July 11, Travelers informed Attala that it denied coverage under policy exclusions for faulty workmanship and wear and tear based on the findings of Lucas Brown of Engineering Design & Testing Corp. ("EDT"). Doc. #35-5. Brown concluded that "[t]he leak through the kettle wall … is the result of progressed kettle erosion due to the dissolution of iron from the kettle wall allowing a hole to form;" "[d]ross buildup, in the corner that experienced the leak, was more severe than in other locations and was a significant factor in the accelerated deterioration experienced by the kettle;" and "the root cause of the limited-service life experienced by the kettle is the omission of [dross protection] insulation around the lower areas of the kettle when the kettle was installed and commissioned by Attala." Doc. #35-6 at PageID 1896.

In response to additional information from Attala, Brown performed a follow-up investigation, concluding that "dross protection insulation had been present in the bottom of the furnace;" "[d]issolution of the kettle wall is normal wear and a normal part of the kettle's life cycle;" "the wall thickness in the locality of the hole in the kettle wall had deteriorated to the equivalence of a few sheets of paper, or less;" and "[a] kettle wall that has been thinned down to this level is at an imminent point of experiencing a leak without any additional influence." Doc.

#35-8 at PageID 1969. Based on this investigation, Travelers again denied coverage on December 8, concluding that "the kettle leak occurred due to normal wear and tear and corrosion/deterioration which occurs during a kettle's life cycle." Doc. #35-9 at 1.

## IV
## Shane Kennett

Shane Kennett, PhD, PE, CWI, is the Managing Director of Engineering Sciences at Secretariat Advisors LLC, an engineering and consulting firm. Doc. #187-1 at 1. Kennett is expected to testify "as to the cause of the failure and hole that developed in [Attala]'s steel galvanizing kettle;" "the standard operation and functions of the galvanizing kettle and furnace, the dross removal process, and the physical loss and/or damage sustained as a result of the kettle failure;" and "the inaccurate causation findings asserted by [Travelers'] engineering expert(s)." *Id*. at 2. Specifically, Kennett is expected to testify that "[t]he findings and conclusions asserted by [EDT] are inaccurate and unfounded;" "EDT does not fully understand [Attala's] dross removal procedures;" "[t]he kettle failed due to advanced wall thinning in one location … which was neither known to nor detectable by [Attala] prior to the incident;" the wall thinning "was caused by localized elevated temperatures [('hot spot')];" and the hot spot was "due to one or more of the following factors: (i) natural gaps in the heat shield above the dross protection insulating boards, (ii) issues with the insulation boards themselves (broken, dislodged, mis-/displaced), (iii) deflection of the lowest southeast corner burner's flame, and/or (iv) deterioration of the lowest southeast corner burner." *Id*. at 2, 3.

Travelers submits that Kennett should be precluded from giving expert testimony regarding the cause of the hot spot because "the Kennett Report identifies four possible causes of the hot spot" but does not "explain[] which of those causes, or what combination of those causes, actually and to a reasonable degree of engineering and scientific certainty, led to the hot spot;" "Kennett's

opinions lack a scientific foundation and are not supported by any reliable methodology" because "he made no effort to validate any of these four 'possibilities' through calculation, measurement, modeling, simulation, peer review or other form of scientific rigor;" and "[s]ince Kennett's opinions are based on speculation, they cannot be of help to the trier of fact." Doc. #187 at 2, 3.

Attala responds that Kennett's testimony is admissible because "it is undisputed that Dr. Kennett is qualified to give expert testimony in this matter;" "Dr. Kennett's opinion is not rendered unreliable by not excluding other possible causes of the kettle failure;" and "his opinions are relevant" because they "will assist the trier of fact on issues of causation and whether coverage under the policy is triggered." Doc. #215 at 7, 9, 13.

Travelers replies that it "demonstrated … that the … statements [it seeks to exclude] from Kennett's report would not aid the trier of fact to decide any fact in issue in this case because they are no more than speculation about a range 'possible causes' of the hot spot," and it "directed the Court to ample precedent holding that where causation of an event or condition is at issue, expert opinion that merely identifies a menu of causal possibilities fails *Daubert*'s rigor," but "[Attala] does not confront any of the deposition testimony confirming the speculative nature of Kennett's opinion" or "make any meaningful attempt to distinguish the substantial Rule 702 precedent discussed in [its] moving brief." Doc. #229 at 3. Travelers also argues that "[Attala]'s Opposition completely ignores th[e] branch of [its] argument" regarding reliability. *Id*. at 6.

Because Travelers does not challenge Kennett's qualifications, the Court only will address whether the portion of his opinion related to the possible causes of the hot spot is relevant and reliable.[6]

[6] Attala argues that "Dr. Kennett's opinion is undoubtedly reliable and relevant" because "Travelers does not challenge Dr. Kennett's 'opinion that the incident leak … occurred because of an unknowingly thinned kettle wall … due to a hot spot.'" Doc. #215 at 7. Attala is correct that the relevance and reliability of some parts of Kennett's opinion are not at issue here; however, that does not render his entire opinion admissible.

### A. Kennett's Opinion

Kennett prepared his report after visiting Attala's facility and inspecting the remnants of the kettle corners. Doc. #187 at PageID 7605. He concludes that because "there has been no evidence to-date of issues with the heat dissipation into the molten zinc bath[,] … the temperature was higher due to conditions on the external side of the kettle wall in the furnace gallery as opposed to dross build-up on the inside of the kettle." *Id*. at PageID 7606. He reports that when the kettle was installed, "the dross protection boards were installed in the narrow furnace gallery by one of the employees at the time, but no photographs are available;" and "Westech performed a site visit on May 05, 2023 and documented the displaced dross protection insulating boards along the length of the kettle." *Id*. at PageID 7609, 7610 (citation omitted). Kennett opines that it was not possible for Westech "to reach a 'more likely than not' level for its opinion that the insulation board issue is related to the initial installation by [Attala]" because "it is not possible to determine that there was an initial installation error versus an insulation board breaking and/or becoming dislodged in operation of the kettle where vibrations periodically occur, and high velocity combustion gasses circulate the kettle by design;" and "with how Westech designed the furnace viewing ports, it was not possible for [Attala] employees to inspect the condition of the insulation boards during operation." *Id*. at PageID 7611.

The part of Kennett's expert report with which Travelers takes issue concludes:

> There are a variety of possible causes for localized hot spots in galvanizing kettles. It is my opinion that the hot spot that caused the accelerated thinning and the leak was most likely due to one or more of the following factors: (i) natural gaps in the heat shield above the dross protection insulating boards, (ii) issues with the insulation boards themselves (broken, dislodged, mis-/displaced), (iii) deflection of the lowest southeast corner burner's flame, and/or (iv) deterioration of the lowest southeast corner burner. It is not possible for myself, or other parties, to conclusively determine which of these factors occurred or is the dominant cause.

Doc. #187-1 at PageID 7589 (citation omitted).

At his deposition, Kennett confirmed that he "conclude[s] that … at least one or more" of the four factors caused the hot spot, but that he cannot determine "which one is the dominant or which two are the dominant;" and that it is a "hypothesis" that any of the four factors caused the hot spot. Doc. #187-2 at PageID 7862, 7863. He clarified that he concluded that there were natural gaps in the heat shield which are visible in the photographs he examined but that the natural gaps would only cause a hot spot "if the burner is deflected" or if "the flame is hotter than normal," and though he was not "there to inspect the burner properly or know what the burn characteristics were" at the time the hole formed in the kettle, the third and fourth factors are "possibilit[ies]" based on "[t]rying to get at an increased temperature logically in that spot because the temperature is coming from that flame." *Id*. at PageID 7863–65, 7867–68.

As to the first factor, Kennett stated that the fact there are gaps in the heat shield is evident from the photographs but "[t]here is not a detailed discussion about the size of those gaps and how much heat gets through them." *Id*. at PageID 7871. As to the second factor, Kennett stated that he "did not go into a discussion in the body" of his report because it is "common sense" that the boards can be broken or "that something that is lightweight as that little board, that's not bolted in place, can be moved, displaced, dislodged." *Id*. at PageID 7873, 7877. When asked if he "did … anything to test th[e] hypothesis that gaps in the heat shield combined with deflection of the burner flame or deterioration of the burner would've caused elevated kettle temperature," Kennett responded that he did not do a simulation "because it would be kind of straightforward, mechanical heat transfer class 101;" and he did not have enough information to perform calculations regarding "how much time would have to pass between the breakage of any board and the development of the … thinning." *Id*. at PageID 7886, 7887.

**B. Relevance & Reliability**

In support of its argument that Kennett's testimony should be excluded because he "has failed to reach a conclusion that a jury would find helpful, and instead offers only a menu of possibilities," Travelers cites *Brown v. Parker-Hannifin Corp.*, 919 F.2d 308 (5th Cir. 1990). Doc. #188 at 10. In that case, an expert witness opined that either overpressurization or a construction defect could have caused a quick release coupling to fail. *Id.* at 311–12. The expert "had never seen the coupling in question, did not know how long the particular coupling had been in service, … did not know under what conditions this particular coupling had been stored or used[,] … did not test his theories to determine whether the alleged overpressurization on the date of the accident was sufficient to cause the failure[, and] … did not examine the defendant's manufacturing process to determine whether, and how often, manufacturing defects occur." *Id.* at 311–312. Rather than "determine which of the many possible causes of the failure was most probable," the expert "developed two theories consistent with the facts." *Id.* at 312. The Fifth Circuit held that the expert's testimony was properly excluded because "other theories explain the failure equally well," and "[w]ithout some basis to establish that one of his theories is the most likely cause of the failure on this occasion, his testimony amounts to speculation and is of no assistance to the jury." *Id.*

In other cases, courts have similarly excluded expert testimony regarding possible, as opposed to probable, causes. *See, e.g.*, *Washington v. Armstrong World Indus., Inc.*, 839 F.2d 1121, 1123 (5th Cir. 1988) (expert's affidavit properly excluded when expert "never actually concluded that [plaintiff's] cancer was caused by asbestos exposure" but "simply state[d] that such a link is statistically probable and cannot be ruled out on the basis of the tests performed by the treating physicians"); *Atl. Specialty Ins. Co. v. Porter, Inc.*, 742 F. App'x 850, 854–55 (5th Cir. 2018) (no error in exclusion of expert who visited and visually inspected site and "theorized" as

to cause of fire because expert "did not provide critical data" and "never did any testing to confirm his hypothesis," rendering his opinion "nothing more than a possibility rooted in speculation"); *Hammond v. Coleman Co., Inc.*, 61 F. Supp. 2d 533, 540–41 (S.D. Miss. 1999), *aff'd*, 209 F.3d 718 (5th Cir. 2000) (excluding expert testimony offered to support plaintiff's manufacturing defect theory as "entirely too speculative" when expert "merely discussed three possible sources of [lantern] malfunction … based upon no testing and no prior experience with lanterns" and "never talk[ed] in terms of probability, only possibilities"); *Bruner v. Cemex, Inc.*, No. 1:08CV1386, 2010 WL 10567332, at *2 (S.D. Miss. Aug. 27, 2010) (excluding expert's "opinion that the unevenly adjusted brakes caused Henderson's vehicle to jackknife" when expert stated in deposition that "the unevenly adjusted brakes certainly could have caused the jackknife, but he did not state his opinion with any degree of probability, noting that there are several factors that need to be considered"). However, in each of these cases, the expert's testimony was offered to prove that a specific event occurred and was the cause of the incident at issue. "The relevance and reliability of expert testimony turns upon its nature and the purpose for which its proponent offers it." *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010). There are situations in which expert testimony should not be excluded although the expert is only able to identify possible causes rather than one probable cause.[7]

The First Circuit's opinion in *Wilder v. Eberhart*, 977 F.2d 673 (1st Cir. 1992), is instructive. In *Wilder*, after the plaintiff's expert "concluded without reservation that the sole cause of the esophageal injury was mobilization of the esophagus by Dr. Eberhart during the VBG procedure," the defendant's experts "were prepared to testify that other 'possible' causes of

[7] *See, e.g., Werth v. Makita Elec. Works, Ltd.*, 950 F.2d 643, 651 (10th Cir. 1991) (improper to exclude testimony of expert who "identified three possible scenarios which could have resulted in the accident" but "could not identify which of the three scenarios actually happened" because his opinion "was the same regardless of which of the three actually occurred").

the esophageal injury existed." *Id*. at 675. The First Circuit held that the district court erred in excluding the testimony because a "defendant may produce other 'possible' causes of the plaintiff's injury" which "need not be proved with certainty or more probably than not;" and to hold otherwise "would unduly tie a defendant's hands in rebutting a plaintiff's case, where as here, plaintiff's expert testifies that no other cause could have caused plaintiff's injury." *Id*. at 676; *see Allen v. Brown Clinic, P.L.L.P*., 531 F.3d 568, 574–75 (8th Cir. 2008) (affirming denial of motion to exclude testimony of expert who opined that "there were at least four more likely scenarios for how the perforation occurred" but "did not … offer an opinion as to which possibility was, to a reasonable degree of medical certainty, more likely" when testimony was offered "to undermine the plaintiff's proffered testimony regarding proximate cause"); *accord Aycock v. R.J. Reynolds Tobacco Co*., 769 F.3d 1063, 1069–70 (11th Cir. 2014).

Here, Travelers denied Attala's claim because it found the damage was not covered, basing its conclusion on several policy exclusions. Travelers has the burden to show that the cause of the hot spot falls under one of the policy exclusions. *See Canal Ins. Co. v. T.L. James & Co*., 911 F. Supp 225, 228 (S.D. Miss. 1995) ("to benefit from an exclusionary provision in an insurance contract, the insurer must show that the exclusion applies").[8] If Attala sought to prove that any one factor caused the hot spot and the hole in the kettle, Kennett's opinion would certainly not be helpful to the factfinder, as Kennett himself admits that he could not determine which factor caused the hot spot. However, Kennett's testimony is intended to demonstrate that alternative causes besides the causes identified by Travelers' experts *could* have caused the hot spot. In this context, his opinion, though it deals only in possibilities, is relevant because it could help the factfinder determine whether Travelers has established that the damage was excluded under the policy.

[8] Mississippi law applies in this case. Doc. #276 at 19.

As to reliability, it is evident from Kennett's deposition testimony that he conducted no testing and did not otherwise attempt to determine which factor or combination of factors was most likely the cause of the hot spot. If Kennett intended to testify that the hot spot was caused by any specific factor, his testimony would be unreliable, as he himself testified that it was not possible, through testing or any other means, to determine which factor or combination of factors caused the hot spot. *See Puga v. RCX Solutions, Inc.*, 922 F.3d 285, 293 (5th Cir. 2019) ("To be reliable, expert testimony must 'be grounded in the methods and procedures of science and … be more than unsupported speculation or subjective belief.'") (omission in original) (quoting *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012)). However, that Kennett did not do any testing, calculations, or other procedures to confirm the cause of the hot spot does not render unreliable his opinion that any of the four factors *possibly* caused the hot spot. Kennett formed his opinion based on information he obtained through inspecting the kettle and furnace, reviewing the reports of Westech and Brown, having discussions with Attala employees, and consulting with technical advisor Jared Kaufman. Doc. #187-1 at PageID 7587–617. He then deduced possible explanations for the hot spot based on such information. The Court finds all this to be a reliable basis to testify about possible causes.

**C. Summary**

Because, given the context and purpose of Kennett's opinion, his testimony is both relevant and reliable, Kennett's testimony will not be precluded under Rule 702 and *Daubert*.

**V**
**<u>Jared Kaufman</u>**

"Jared Kaufman is a licensed Professional Engineer with Bachelor's and Master's Degree[s] in Mechanical Engineering" and is "the President of CIC Pittsburgh LLC, which specializes in the supply and service of industrial furnaces and hot dip galvanizing equipment."

Doc. #189-1 at 1. Kaufman is expected to testify about "the standard installation, operation, maintenance, and lifespan of the galvanizing kettle and furnace, the dross removal process, and the root cause of the failure and hole that developed in [Attala's] steel galvanizing kettle;" and "the inaccurate causation findings asserted by [Travelers'] engineering expert(s)." *Id*. at 2.

Travelers submits that "[b]ecause [Attala] disclosed no opinions held by Kaufman, the Court cannot exercise its gatekeeping function under Federal Rule of Evidence 702 and *Daubert*;" "[i]f the Court were to permit Kaufman to testify to the opinions set forth in the Kennett Report, Kaufman's testimony would be entirely duplicative of, and would wholly overlap, the expert testimony of Shane Kennett;" and "if the Court were to … allow Kaufman to testify to any opinions contained in the Kennett Report, it should preclude Kaufman from offering … opinions [related to potential causes of the hot spot which] suffer from the same flaws identified in [its motion to preclude Kennett's testimony]." Doc. #189 at 2–3.

Attala responds that "Travelers has failed to meet its burden to establish that the Kaufman Disclosure is deficient pursuant to Federal Rule of Civil Procedure 26(a) and Local Rule Uniform Civil Rule 26(a)(2);" "this Court has already denied Travelers' effort to bar Mr. Kaufman for not preparing a separate report;" "hybrid witnesses such as Mr. Kaufman are not required to prepare written reports;" and "the challenged expert opinions are reliable, relevant and therefore admissible." Doc. #216 at 2.

Travelers replies that "[Attala] fails to identify any opinions formed by Kaufman that satisfy the requirements of Rule 702 or *Daubert*" and "mounts no defense to [its] argument that Kaufman's testimony, if allowed under *Daubert*, would be duplicative of the testimony of Shane Kennett and needlessly cumulative under Fed. R. Civ. P. 403." Doc. #228 at 2.

**A. Rule 702**

Travelers argues that "Kaufman has not submitted a stand-alone report in this litigation, nor has he performed his own analysis, nor did he author any portion of the Kennett Report;" "[t]he Kennett Report does not identify any division of labor between Kennett and Kaufman, nor does it identify any opinions or accompanying analyses belonging to Kaufman;" and "[Attala]'s failure of disclosure prevents the Court from performing its gate-keeping function to ensure that Kaufman's proffered testimony is relevant, helpful to the trier of fact, and reliable." Doc. #190 at 9, 10.

Attala responds that Travelers "filed its motion to strike [Kaufman's disclosure for the same reasons] after the expiration of the time period" allowed by the Local Rules, and "Travelers may not circumvent the waiver provision of Local Rule 26(a)(3) on this motion." Doc. #217 at 10, 11. Attala further argues that "the Joint Report qualifies as a written report for purposes of expert witness disclosure;" and "[Kaufman] qualifies as a hybrid witness for which no separate written report is required." *Id.* at 11.

Travelers replies that "[it] does not challenge the adequacy or sufficiency of the Kaufman Disclosure under Fed. R. Civ. P. 26 or 37," and "the instant Motion is not an attempt to 'circumvent the waiver provision' of L. U. Civ. R. 26(a)(3)" but rather "raises a distinct legal issue under Fed. R. Evid. 702 and *Daubert*: whether Kaufman holds any opinion that can be tested for relevance and reliability under the *Daubert* framework." Doc #228 at 5 & n.3. Travelers further argues that "[Attala] intended and attempted to disclose Kaufman as a retained and specially employed expert witness under Fed. R. Civ. P. 26(a)(2)(B), and not [a hybrid fact/expert witness] under Fed. R. Civ. P. 26(a)(2)(C);" and "[e]ven if the Court were to permit [Attala]'s eleventh-hour attempt to re-designate Kaufman under Rule 26(a)(2)(C), it still should preclude his testimony" because "the

subject matter of his supposed opinions does not draw upon any work Kaufman did … before being specially retained by [Attala]'s counsel." *Id*. at 2–4 (emphases omitted).

Local Rule 26(a)(3) provides that "[c]hallenges as to inadequate disclosure of expert witness(es) must be made no later than 30 days before the discovery deadline or will be deemed waived." As mentioned above, the Court overruled Travelers' objection to Judge Virden's order denying Travelers' motion to strike Kaufman's disclosure as untimely under Local Rule 26(a)(3). Doc. #322.

This Court addressed a nearly identical situation in *Dunigan v. Mississippi Valley State University*, No. 4:19-CV-33, 2020 WL 5803447 (N.D. Miss. Sep. 29, 2020). In that case, the magistrate judge denied as untimely under Local Rule 26(a)(3) the defendant's motion to exclude the plaintiff's experts on the grounds that their designations were inadequate. *Id*. at *1. The defendant then filed another motion to exclude the experts, arguing that the expert designation "offers no information that would be required under Rule 702 or *Daubert*." *Id*. This Court held that although "the defendants seek to frame their argument not as a challenge to disclosure but as a challenge to reliability under *Daubert* based on the allegedly inadequate disclosure," since "the defendants … waived any challenge to the adequacy of the disclosure" and "[a]t its heart, the motion is a challenge to the adequacy of [the] disclosure," the Court would not allow the defendants to "circumvent the waiver provision of Local Rule 26(a)(3) by simply relabeling their motion as a *Daubert* challenge." *Id*. at *2.

Here, as in *Dunigan*, Travelers' *Daubert* challenge relies on its argument that the Kaufman disclosure is inadequate. *See* Doc. #190 at 10 ("[Attala] failed to provide a report with Kaufman's opinions" along with the Kaufman disclosure and "the Kaufman Disclosure does not come close to satisfying the disclosure requirements of *Daubert*."). For the same reasons the defendants were

not allowed to reframe their disclosure challenge as a *Daubert* motion in *Dunigan*, Travelers will not be allowed to do so here. So, Travelers' motion to preclude Kaufman's testimony will not be granted based on Rule 702 and *Daubert*.[9]

**B. Rule 403**

Travelers contends that "[p]ermitting Kaufman to offer any expert testimony would be unnecessarily cumulative" because "Kaufman is not going to offer any testimony that Kennett

[9] Because the Court concludes that Travelers has waived its challenge to the adequacy of the Kaufman disclosure, it need not address Attala's arguments that the report authored by Kennett meets the requirement of a written report under Federal Rule of Civil Procedure 26(a)(2)(B) and that Kaufman is a hybrid witness who is not required to provide a written report. However, the Court will briefly address both arguments.

Rule 26(a)(2)(B) specifies that the written report must be "prepared and signed by the witness." The Kaufman disclosure states that Kaufman "has reviewed, contributed towards, and will attest to in his capacity as a technical consultant" the "joint Report," Doc. #189-1 at 2; and the attached report is signed by both Kennett and Kaufman, Doc. #189-2 at PageID 7931. Kaufman testified that he visited Attala's site with Kennett, "participated in numerous phone calls with Dr. Kennett" regarding the contents of the report, "collaborated with Dr. Kennett to prepare the expert report," and "made edits to the report and discussed them with Dr. Kennett to ensure that the report reflected opinions that [they] both held." Doc. #167-4 at 2. Even if Travelers had not waived its challenge to the Kaufman disclosure, the disclosure satisfied Rule 26(a)(2)(B) because the report was prepared and signed by Kaufman, even if it was primarily written by Kennett. *See Ronaldo Designer Jewelry, Inc. v. Cox*, No. 1:17-CV-2, 2020 WL 1124599, at *10 (N.D. Miss. Mar. 6, 2020) ("The preparation requirement is satisfied if the expert 'substantially participated in the preparation' of the document.") (citation omitted); *Imperial Trading Co. v. Travelers Prop. Cas. Co. of Am*., No. 06–4262, 2009 WL 2408412, at *2 (E.D. La. July 28, 2009) (written report requirement satisfied when experts discussed contents of report together, the other expert did the principal drafting of the report, and the challenged expert reviewed and signed the report because "Rule 26(a)(2)(B) does not prohibit collaboration in the preparation of an expert report"); *Harris v. BMW of N. Am., LLC*, No. 4:19-CV-00016, 2021 WL 5964704, at *3 (E.D. Tex. Dec. 16, 2021) ("So long as the report is based on the expert's prior substantive input, is signed by the witness, and reflects the testimony to be offered by the witness, the Rule 26 requirements are met.") (citation omitted).

As to Attala's argument that Kaufman was not required to provide a written report, expert witnesses who are not "retained or specially employed to provide expert testimony" or "whose duties as the party's employee [do not] regularly involve giving expert testimony" are governed by the disclosure requirements of Federal Rule of Civil Procedure 26(a)(2)(C) and are not subject to the written report requirement of Rule 26(a)(2)(B). FED. R. CIV. P. 26 advisory committee's note to 1993 amendment. "A 26(a)(2)(C) witness's opinion must be based on facts or data obtained or observed in the course of the sequence of events giving rise to the litigation." *LaShip, LLC v. Hayward Baker, Inc*., 296 F.R.D. 475, 480 (E.D. La. 2013) (citing *Downey v. Bob's Discount Furniture Holdings, Inc*., 633 F.3d 1, 6 (1st Cir. 2011), and *Goodman v. Staples The Office Superstore, LLC,* 644 F.3d 817, 826 (9th Cir. 2011)). "[S]omeone may be a witness not required to produce a report as to portions of his testimony and simultaneously deemed a retained or specially employed expert who is subject to Rule 26(a)(2)(B) as to other portions." *Id*. (citing *Goodman*, 644 F.3d at 826). "[A] Rule 26(a)(2)(B) designation is … warranted when an expert will give an opinion based on facts beyond those observed in the expert's non-retained role." *Pinkston v. Miss. Dep't of Corr*., No. 4:17-CV-39, 2020 WL 6121945, at *2 (N.D. Miss. Oct. 16, 2020) (quoting *Cooper v. Meritor, Inc*., No. 4:16-CV-52, 2018 WL 2451833, at *6 (N.D. Miss. May 31, 2018)). Here, even if Kennett's proposed testimony regarding his visit to Attala's facility before he was retained to provide expert testimony was not subject to the written report requirement, the portion of his testimony related to the contents of the report prepared after being retained as an expert, at least, are subject to Rule 26(a)(2)(B).

cannot also offer;" and "having two experts with identical overlapping opinions violates the limitations set forth in Federal Rule of Evidence 403 concerning duplicative or cumulative evidence." Doc. #190 at 11, 13.

Attala responds that "[b]ecause [Kaufman] visited and inspected Attala Steel's facility shortly after the loss to directly observe the condition of the damaged kettle and furnace, his testimony would not be duplicative of Dr. Kennett's testimony." Doc. #217 at 11.

Travelers replies that "[t]here is no mention in the Kennett Report of any observations Kaufman made during his one visit to [Attala]'s facility in May 2023, nor do any of the opinions stated in the Kennett Report rely on any observation Kaufman made;" and "while Kaufman may have viewed the furnace and Kettle in May 2023 (and Kennett did not), this does not change the fact that the two experts seek to offer testimony that is identical in every way." Doc. #228 at 6.

Federal Rule of Evidence 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of … needlessly presenting cumulative evidence."

The "Subject Matter of Expert Testimony" and "Summary of Facts and Opinions" sections of the Kennett and Kaufman disclosures are nearly identical; and the disclosures specify that both experts will testify in conformity with the same expert report. *See* Doc. #189-1 at 2–3; Doc. #189-2 at PageID 7927–28. Attala's only response to Travelers' Rule 403 argument is that Kaufman's testimony will not be duplicative of Kennett's testimony because Kaufman visited Attala's facility in May 2023 and Kennett did not. Doc. #217 at 2, 11. However, neither the Kaufman disclosure nor the expert report mentions this visit. *See* Doc. #189-1; Doc. #189-2 at PageID 7931–61. Kennett testified that "[t]he purpose of the [May 2023] visit was to inspect the damaged galvanizing furnace and participate in discussions regarding recommendations on a proposed

course of action to repair and/or replace the furnace." Doc. #167-4 at 1–2. There is no indication in the Kaufman disclosure or in Kaufman's affidavit that he will testify about his May 2023 visit or that the May 2023 visit formed any part of the basis of his proposed testimony.

Travelers asks that the Court "preclude Kaufman from giving expert testimony in this action, whether by affidavit, at hearing, at trial, or otherwise." Doc. #189 at 3. Based on the information available to the Court at this stage, it is certainly possible that if this case ultimately goes to trial, Kaufman's testimony at such trial would be needlessly cumulative of Kennett's testimony. However, it also appears that Kaufman and Kennett have different areas of expertise and had different roles in preparing the expert report;[10] in that sense, it is possible that Kaufman's testimony would not be needlessly cumulative.

Ultimately, at this point in the litigation, it would be premature to exclude Kaufman's testimony as needlessly cumulative when there are no hearings presently set in this case, it is uncertain whether this case will ultimately proceed to trial,[11] and it is not yet known exactly what Kennett's testimony and Kaufman's testimony would be at trial. *See State Auto. Mutual Ins. Co. v. Freehold Mgmt., Inc.*, No. 3:16-CV-2255-L, 2019 WL 1436659, at *10 (N.D. Tex. Mar. 31, 2019) (denying motion to strike expert testimony because "Defendants' contention regarding the cumulative nature of Marshall's testimony is premature and better suited for resolution in the context of a pretrial motion in limine under Rule 403"); *Martin v. Nat'l Interstate Ins. Co*., No. 24-

[10] The Kaufman disclosure states that his company "specializes in the supply and service of industrial furnaces and hot dip galvanizing equipment," and that he "has direct knowledge and experience designing, manufacturing, inspecting, troubleshooting, and servicing the type of steel galvanizing kettle and furnace at issue in this matter." Doc. #189-1 at 1. The Kennett disclosure states that "[h]is work includes the investigation of metallic component failures in mechanical systems and equipment at industrial facilities" and that "[h]e provides root-cause analyses of metal component failures." Doc. #189-2 at 1–2. According to Kennett's deposition testimony, Kaufman was "a Technical Advisor" on the report "who had specific industry experience" with "galvanizing" and the "furnace facility." Doc. #189-3 at PageID 8197.

[11] The parties filed cross-motions for summary judgment which are currently pending. Docs. #293, #300. The briefing on the motions for summary judgment does not include any testimony by Kaufman.

1645, 2025 WL 1442567, at *8 (E.D. La. May 20, 2025) ("Without the benefit of hearing the evidence that plaintiff will have introduced at trial, the Court finds that it would be premature to exclude Dr. Barczyk's testimony as cumulative at this juncture."); *accord In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico, on April 20, 2010*, No. MDL 2179, 2012 WL 395048, at *4 (E.D. La. Feb. 7, 2012); *Suhay v. Amusement Mgmt. Partner, LLC*, No. 4:17-CV-01440, 2018 WL 4865053, at *1 (S.D. Tex. July 25, 2018). Accordingly, the Court will not preclude Kaufman's testimony under Rule 403 at this stage.

### C. Cause of Hot Spot

Travelers argues that "as set forth in [its memorandum in support of its motion to preclude Kennett's testimony, which it incorporates by reference], the opinions in the Kennett Report as to the cause of a hot spot in the southeast corner of the Kettle are impermissibly speculative and unsupported by a reliable scientific methodology." Doc. #190 at 14. Attala responds that "[a]s demonstrated in the … Memorandum [in opposition to the motion to preclude Kennett's testimony], the expert opinions [in the report] are reliable, relevant, and therefore admissible." Doc. #217 at 12.

As discussed above, for the same reasons that the motion to preclude Kennett's testimony regarding the cause of the hot spot will not be granted, Kaufman also will not be precluded from testifying about the cause of the hot spot.

## VI
## Conclusion

For the reasons explained above, Travelers' motions to preclude expert testimony by Kennett and Kaufman [187][189] are **DENIED**.

**SO ORDERED**, this 29th day of September, 2026.

**/s/Debra M. Brown**
**UNITED STATES DISTRICT JUDGE**